

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00069-CR

_____


NORRIS SHANNON BAINES, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 217th Judicial District Court
Angelina County, Texas
Trial Court No. 29,109


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

For the sake of clarity, we withdraw our opinion rendered in the matter September 1, 2010, and issue this opinion in replacement of it.

Norris Shannon Baines appeals his Angelina County conviction for the state jail felony of evading detention and sentence of 180 days in the county jail.[1] The State alleged Baines committed evading detention by leading a police officer on a low-speed chase at speeds of approximately fifteen to twenty miles per hour around a single city block. The State sought to enhance the punishment, alleging that Baines had previously been convicted of two prior felonies. After Baines waived his right to a jury, a bench trial was conducted. The trial court carried Baines's motion to suppress along with the bench trial. After the parties had rested, the trial court reviewed the arresting officer's in-car video recording of the incident, recalled the police officer, and questioned the police officer concerning the depiction of events as preserved on the video recording. The trial court then permitted closing arguments and oral arguments on the motion to suppress. The trial court denied Baines's motion to suppress and found Baines guilty of evading detention. At the punishment hearing, the trial court accepted Baines's plea of true to the enhancement paragraphs, but announced, "I'm making no finding on the enhancements. And

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

under [12.44(a)] I'm sentencing you to 180 days in county jail . . . ." The trial court later explained its decision was based on the gravity and circumstances of the offense.

Baines raises three issues on appeal, arguing that the trial court erred in denying his motion to suppress, the trial court erred by calling a witness after the parties had rested, and the evidence is legally and factually insufficient to support the conviction. The State raises a cross-point in its brief, complaining that the sentence imposed by the trial court is illegal.

## I. The Error, if any, in Reopening the Evidence on the Court's Motion Is Not Preserved

In his first point of error, Baines argues that the trial court erred in re-opening the evidence on its own motion. The Texas Code of Criminal Procedure provides that a trial court "shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (Vernon 2007); *see Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003) (interpreting Article 36.02). Baines contends that the trial court erred in re-opening the evidence without a motion from either party. Baines further contends that the additional testimony was not necessary to the due administration of justice. The reporter's record provides as follows:

> [Defense Counsel]: Defendant would rest, Your Honor.
>
> [Prosecutor]: We do not have any rebuttal evidence. Close.
>
> THE COURT: Roll the TV over here. Roll the TV over here closer.
>
> [Defense Counsel]: Yes, Your Honor.

3

THE COURT: You can step down, Mr. Baines.

[Defense Counsel]: If you want me to stop, let me know, Judge.

(DVD Played.)

THE COURT: Yeah, stop it and back it up again. Go.

[Defense Counsel]: I think we go into slow.

THE COURT: Yeah. Okay. Back it up again. Officer Jackson, come up here a second.

KEVIN JACKSON,

resumed the witness stand and testified under oath as follows:

EXAMINATION

BY THE COURT: Hold on. Okay. What I want you to do is watch. This is your car approaching the red light or that intersection. I can't tell - - I guess you're coming up on the railroad tracks. I see the marker now in the turn lane.

[Officer Jackson]: Yes, sir.

THE COURT: What I want you to do is tell him to stop it as soon as you think you see what you saw the truck start to move forward. Just tell him, stop, and we're going to run it slow.

[Officer Jackson]: Stop.

THE COURT: Okay.

[Officer Jackson]: He's already moving.

THE COURT: Okay. Can you point out the taillights to me of what you're showing me is the truck? You just have to hold it down.

4

[Officer Jackson]:   These are the taillights.

THE REPORTER:   I'm sorry, sir.   I can't hear you.

[Officer Jackson]:   I said the taillights are right there.   This is the truck before it was -- that was green.

THE COURT:   Okay.   Back it up a little bit, [Defense Counsel], just a couple frames if you can do that.

[Defense Counsel]:   Okay.   Let's see.

THE COURT:   Slow it down.   Will it slow down more than that?   More than that?

[Officer Jackson]:   He was --

THE REPORTER:   I'm sorry.   I didn't hear what you said.

[Officer Jackson]:   I'm sorry.   I was saying the same thing.   He was already moving.

THE COURT:   Stop.   Stop it.

[Defense Counsel]:   Okay.   Stop?

THE COURT:   Okay.   Will it slow down any more than that?

[Defense Counsel]:   It's currently at, I think, half or – no, it's at a quarter.

THE COURT:   Can you slow it down any more than that?

[Defense Counsel]:   I'm not sure.   Quarter speed is the slowest we can go, Judge.   I can play it at a quarter.

THE COURT:   Okay.

[Defense Counsel]:   Playing at a quarter right now.

5

THE COURT: Stop. Okay. That's where the truck starts moving?

[Officer Jackson]: Yes, sir.

THE COURT: Because from what I can tell -- and tell me if I'm wrong -- you cannot see the truck taillights until that point.

[Officer Jackson]: Yes, sir.

THE COURT: And is that because why? Why can't I see them before then?

[Officer Jackson]: Because it's in front of this other car.

THE COURT: Okay. All right. Go ahead. Okay. Back it up a little bit.

[Defense Counsel]: Okay.

THE COURT: Okay. Stop. All right. Thank you.

[Officer Jackson]: Do you need me anymore, Judge.

THE COURT: No, have a seat.

Defense counsel never objected at any point during the "examination" of Jackson by the trial court after both parties had rested. In fact, it appears from the record that defense counsel participated in that exchange between the judge and the witness by operating the device that played the recording. To preserve a complaint for appellate review, Baines must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1. Any error concerning the trial court re-opening the evidence has not been

6

preserved for appellate review. We overrule Baines's complaint that the trial court erred in re-opening the evidence after both parties had rested.

**II.     The Trial Court Did Not Err in Denying Baines's Motion to Suppress**

Baines alternatively argues that the trial court erred in denying his motion to suppress because the evidence established that the traffic light had turned green prior to Baines's vehicle entering the intersection. In essence, Baines's argument is that Jackson lacked reasonable suspicion for the initial detention and, therefore, any statements or other evidence tainted by the alleged illegal detention should have been suppressed.

Jackson, an officer with the Lufkin Police Department, testified that he observed a vehicle driven by Baines enter an intersection while the traffic light was red and that the traffic light flashed green while Baines's vehicle was in the middle of the intersection. Jackson testified that observing this, he activated his overhead emergency lights in the 300 block of Church Street, which is located behind the Brookshire Brothers Market. Baines then led Jackson on a low-speed chase at speeds of approximately fifteen to twenty miles per hour around a city block. In doing so, Baines traveled down Church Street going south and turned onto Kornegary going west. Immediately after turning onto Kornegary, Jackson observed Baines throw something into a bush. Baines then proceeded down Kornegary to Chestnut and then returned to Church Street on Kerr. The chase ended at 313 Church Street, almost where the "chase" had begun. Jackson estimated the total distance of the chase to be approximately a quarter of a mile. Baines was arrested for

evading detention. The police later discovered some marihuana near the location Jackson had observed Baines discard something from his car. Baines testified that the traffic light was green when he proceeded through the light.

Our review of the video recording reveals that due to the distance from the police officer's camera to the intersection and its perspective behind Baines's car, it is difficult to determine from it whether Baines's vehicle had entered the intersection against a red light. The in-car video recording does not clearly contradict Jackson's testimony and the movement of Baines's vehicle after the traffic light turned green suggests that Baines's vehicle may have been in motion while the traffic light was red.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts, so long as the record supports those findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because the trial court is the exclusive finder of fact, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Further, we give deference to the trial court's rulings on mixed questions of law and of fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. On the other hand, in circumstances where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id*.

8

Baines argues that his detention by Jackson was not lawful because the evidence is insufficient to establish a reasonable suspicion of unlawful activity to justify the detention. A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984). "If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). However, "[a]n officer's reasonable suspicion of an alleged traffic violation cannot be based on a mistaken understanding of traffic laws." *Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd).

The Texas Transportation Code prohibits the operator of a motor vehicle from entering an intersection when the traffic light is signaling red. *See* TEX. TRANSP. CODE ANN. § 544.007 (Vernon Supp. 2010). Although Baines testified the light was showing green when he entered the intersection, Jackson testified that the light was red and only turned green after Baines entered the intersection. The trial court could have believed Jackson's testimony instead of the testimony of Baines. Thus, the trial court could have concluded that Jackson observed a traffic violation and, therefore, had reasonable suspicion for the traffic stop and detention. The trial court did not err in denying Baines's motion to suppress.

## III.    The Evidence Is Sufficient

In his remaining points of error, Baines argues the evidence is legally and factually[2] insufficient to support his conviction. According to Baines, the low speed and short length of the chase establishes that he was not attempting to flee Jackson. Baines alternatively argues that the trial court's rejection of his defense of necessity is not supported by the evidence.

We are directed to subject challenges to the legal sufficiency of the evidence to the hypothetically-correct jury charge analysis. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In order to prove its case under Section 38.04 of the Texas Penal Code, the State was obligated to prove that (1) Baines, (2) intentionally fled, (3) from a person that he knew was a peace officer, (4) who was attempting lawfully to arrest or detain him. In order to raise the offense from the level of a class A misdemeanor to a state jail felony, it was necessary in this case to prove that Baines employed a vehicle in his attempt to flee. The State offered evidence of all of these things.

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the

---

[2]In the *Brooks* plurality opinion, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* [*v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)], factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision). Further, a proper application of the *Jackson v. Virginia* legal sufficiency standard is as exacting a standard as any factual sufficiency standard. *See id.* at *11. In a concurring opinion, Judge Cochran pointed out that the United States Supreme Court has rejected a legal sufficiency test that requires a finding that "no evidence" supports the verdict because it affords inadequate protection against potential misapplication of the "reasonable doubt" standard in criminal cases. *Id.* at *16 (Cochran, J., concurring). Rather than meeting a mere "no evidence" test, legal sufficiency is judged not by the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id.* at *17. Under the authority of *Brooks*, we do not address the defendant's challenge to the factual sufficiency of the evidence.

essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Section 38.04 of the Texas Penal Code criminalizes the act of intentionally fleeing from a person the actor knows is a peace officer attempting to lawfully arrest or detain him. TEX. PENAL CODE ANN. § 38.04 (Vernon Supp. 2010). Baines claims the evidence is insufficient to establish that he fled from Jackson.

Baines argues the length and speed of the chase establishes he did not intentionally flee Jackson. We note that a chase of this length and speed would not normally be considered evading detention. However, the length and speed of the chase are not the determinative factors in evaluating whether Baines evaded detention. The relevant inquiry is whether there was an attempt to flee or delay the detention. The length and speed of the chase are factors in considering whether there was an attempt to escape, but are not determinative by themselves. As this Court has noted, "under the law, fleeing slowly is still fleeing." *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.). The State introduced evidence that while driving around the block, Baines discarded something and marihuana was discovered near the location where Baines discarded something. On cross-examination, Baines admitted that he threw something out of his vehicle and that "[i]t was said to be marijuana." A reasonable person could conclude Baines was fleeing detention while he considered what he might do with the contraband in his vehicle.

11

Alternatively, Baines argues the evidence is insufficient to support the conclusion his conduct was not justified. A person's actions are justified under the defense of necessity if he reasonably believed his conduct was immediately necessary to avoid imminent harm, the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented, and no legislative purpose existed to exclude the defense. TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). In raising a justification, a defendant bears the burden of production, which requires the production of some evidence that supports the particular justification. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces some evidence, the State then bears the burden of persuasion to disprove the raised justification beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913–14.

Baines admitted he did not stop immediately after Jackson had signaled him to stop, but he argued his conduct was justified, based on the defense of necessity. Baines testified at trial as follows:

> I sit through the light twice, and it didn't change. The third time when it did change, I proceeded. And I guess about halfway through the block, the officer turned his lights on.
>
> The only place that I knew where someone knew me was right there on - - I guess it's Church Street. And I was already passed [sic] it, so I didn't want to stop and put myself in a vulnerable position, because in previous cases I hadn't been treated fairly; and I just wanted there to be witnesses instead of my word against the officer's.

12

Baines later explained, in 1994, he was imprisoned for something he did not do and "later on they found out who did it, and they didn't say anything to me . . . ." When asked if an officer had ever committed an act of violence against him, Baines testified, "Officer David Womack stuck a gun to my head." On cross-examination, the State, referencing some statements Baines made on the in-car video, asked Baines if he was "concerned that you were wanted for the murder at that time." Baines responded, "No, sir. No, sir. I wasn't concerned that I was wanted for the murder. I just knew I wouldn't get fairly treated because of that murder situation."[3] According to Baines, the house he eventually stopped at, 313 Church Street, was the house of a friend where "it was understood I was coming back to spend the night." Baines testified he had already passed his friend's house when Jackson activated his lights.

A reasonable person could have rejected Baines's defense of necessity. During the chase, Baines passed a well-lit parking lot. Baines could have stopped at that parking lot. A reasonable person could have concluded Baines was fleeing detention while he considered what he might do with the contraband in his vehicle, rather than out of fear of the police. In addition, Baines admitted that he had called the police earlier that day to report a stolen car. Baines's report to the police undermines his testimony that he evaded detention because he feared the police. Further, a reasonable person could have concluded that an ordinary and prudent person in the same circumstances would not hold the same belief that flight was immediately necessary. A

---

[3]The record is rather vague concerning what the "murder situation" concerned.

13

reasonable person could have concluded the State met its burden of persuasion. The evidence is sufficient to support the trial court's rejection of Baines's defense of necessity.

**IV.     This Court Lacks Jurisdiction Over the State's Cross-Appeal**

In its brief, the State raises a cross-issue complaining that Baines's sentence is an "illegal sentence." We note the State failed to file a notice of appeal to perfect its cross-appeal. Thus, we must first determine whether we have jurisdiction to entertain the State's cross-appeal.[4] The issue of whether a State is required to file a separate notice of appeal in order to bring a cross-appeal has not yet been decided by the Texas Court of Criminal Appeals. *See Mizell v. State*, 119 S.W.3d 804, 807 (Tex. Crim. App. 2003) (declining to decide whether notice of appeal is required for State to bring cross-appeal).

The United States Supreme Court has held the government may not bring an appeal without express statutory authority. *United States v. Sanges*, 144 U.S. 310, 313–18 (1892); *State v. Moreno*, 807 S.W.2d 327, 330 (Tex. Crim. App. 1991); *State v. Aguilar*, 260 S.W.3d 169, 171 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The right of the State to file an appeal is strictly circumscribed by Article 44.01 of the Texas Code of Criminal Procedure, which provides as follows in pertinent part:

---

[4]Subject-matter jurisdiction is a threshold matter which an appellate court must address, sua sponte, if not raised by the parties, before deciding substantive issues. *State v. Roberts*, 940 S.W.2d 655, 657 (Tex. Crim. App. 1996), *overruled on other grounds by State v. Medrano*, 67 S.W.3d 892, 903 (Tex. Crim. App. 2002); *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex. Crim. App. [Panel Op.] 1980); *Neugebauer v. State*, 266 S.W.3d 137, 139 (Tex. App.—Amarillo 2008, no pet.); *McCarver v. State*, 257 S.W.3d 512, 513 (Tex. App.—Texarkana 2008, no pet.).

14

(a)     The state is entitled to appeal an order of a court in a criminal case if the order:

(1)     dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint;

(2)     arrests or modifies a judgment;

(3)     grants a new trial;

(4)     sustains a claim of former jeopardy;

(5)     grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case; or

(6)     is issued under Chapter 64.

(b)     The state is entitled to appeal a sentence in a case on the ground that the sentence is illegal.

(c)     The state is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment.

(d)     The prosecuting attorney may not make an appeal under Subsection (a) or (b) of this article later than the 20th day after the date on which the order, ruling, or sentence to be appealed is entered by the court.

. . . .

(i)     In this article, "prosecuting attorney" means the county attorney, district attorney, or criminal district attorney who has the primary responsibility of prosecuting cases in the court hearing the case and does not include an assistant prosecuting attorney. . . .

TEX. CODE CRIM. PROC. ANN. art. 44.01 (Vernon Supp. 2010). The Texas Court of Criminal Appeals, noting that Article 44.01 "specifically excluded an 'assistant prosecuting attorney,'" has interpreted Article 44.01 as requiring the "prosecuting attorney" to personally authorize specific appeals filed on behalf of the State. *State v. Boseman*, 830 S.W.2d 588, 591 (Tex. Crim. App. 1992).

In addition, the Texas Rules of Appellate Procedure provide additional requirements that the State must meet. Rule 25.2 provides as follows in pertinent part:

(a)    *Rights to Appeal*.

    (1)    Of the State. The State is entitled to appeal a court's order in a criminal case as provided by Code of Criminal Procedure article 44.01.

    . . . .

(b)    *Perfection of Appeal*. In a criminal case, appeal is perfected by timely filing a sufficient notice of appeal. . . .

(c)    *Form and Sufficiency of Notice*.

    (1)    Notice must be given in writing and filed with the trial court clerk. . . .

    (2)    Notice is sufficient if it shows the party's desire to appeal from the judgment or other appealable order, and, if the State is the appellant, the notice complies with Code of Criminal Procedure article 44.01.

TEX. R. APP. P. 25.2. Rule 26.2(b), which governs the time to perfect an appeal by the State, provides that "[t]he notice of appeal must be filed within 20 days after the day the trial court enters the order, ruling, or sentence to be appealed." TEX. R. APP. P. 26.2(b).

The Austin, Dallas, Beaumont, and Fort Worth Courts of Appeals have each held that the State must file a notice of appeal in order to perfect a cross-appeal. *See, e.g.*, *Davis v. State*, 144 S.W.3d 192, 202 (Tex. App.—Fort Worth 2004, pet. ref'd); *Strong v. State*, 87 S.W.3d 206, 212 (Tex. App.—Dallas 2002, pet. ref'd); *Ganesan v. State*, 45 S.W.3d 197, 203–04 (Tex. App.—Austin 2001, pet. ref'd); *Malley v. State*, 9 S.W.3d 925, 927 (Tex. App.—Beaumont 2000, pet. ref'd); *see also Rodriguez v. State*, 939 S.W.2d 211, 219 (Tex. App.—Austin 1997, no pet.).

Contrarily, the Fourteenth District Court of Appeals has held that a notice of appeal is not a predicate for the State to file a cross-appeal, irrespective of from which subsection the appeal is pursued. *McClinton v. State*, 38 S.W.3d 747, 750–51 (Tex. App.—Houston [14th Dist.] 2001), *pet. dism'd, improvidently granted*, 121 S.W.3d 768 (Tex. Crim. App. 2003). The court stated:

> Under the civil appellate rules, this court would not be authorized to grant the State relief because the State did not file a notice of appeal. TEX. R. APP. P. 25.1(c). However, the criminal analog has no such provision. *See* TEX. R. APP. P. 25.2(a).

*McClinton*, 38 S.W.3d at 750. The Fourteenth District cited *State v. Clemmer*, 999 S.W.2d 903, 905 (Tex. App.—Amarillo 1999, pet. ref'd), as additional authority, noting the Amarillo Court of Appeals had "elected to address the state's complaint when the State 'clearly expressed the error alleged, the authority relied upon, and the relief sought[.]'" *McClinton*, 38 S.W.3d at 750 (quoting *Clemmer*, 999 S.W.2d at 905).

We disagree with the Fourteenth District that the differences in language between Rules 25.1 and 25.2 suggest a notice of appeal is not required for a cross-appeal in a criminal case.

17

Rather, both rules state in absolute terms that an appeal is perfected upon the filing of a notice of appeal. The fact that the civil rules describe this basic principle in more detail does not suggest that the criminal rules contain an exception for cross-appeals. Further, the discussion contained in *Clemmer* concerns whether the court could address unassigned error argued by the State, but not properly presented to the court in an issue presented. *Clemmer*, 999 S.W.2d at 905. *Clemmer* does not contain any discussion about whether the State must file a notice of appeal to bring a cross-appeal. *See id*. There is nothing in the Texas Rules of Appellate Procedure or in Article 44.01 which specifically provides that the State is exempt from filing a notice of appeal when bringing an appeal under Article 44.01(b).[5] We agree with the majority of the other Texas Courts of Appeals that have ruled on the issue that the State is required to file a notice of appeal to perfect a cross-appeal under Article 44.01(b). We lack jurisdiction to entertain the State's cross-appeal.

## V.      The Sentence Is Not an Illegal Sentence

The Texas Court of Criminal Appeals has held a court with jurisdiction over a criminal case has inherent authority to notice and correct an illegal sentence. *See Mizell*, 119 S.W.3d at 807. An "illegal sentence" cannot be waived and can be challenged at any time. *Ex parte Pena*,

---

[5]The San Antonio Court of Appeals, in *Mizell v. State*, 70 S.W.3d 156, 163 (Tex. App.—San Antonio 2001), *aff'd*, 119 S.W.3d 804, held a notice of appeal is not required when the State is appealing a ruling on a question of law under Article 44.01(c) because Article 44.01(d) is restricted to Article 44.01(a) and Article 44.01(b). The Austin and Dallas Court of Appeals have disagreed and held a notice of appeal is required even when an appeal is brought pursuant to Article 44.01(c). *Ganesan*, 45 S.W.3d at 203–04 (holding notice of appeal required under Article 44.01(c)); *Strong v. State*, 87 S.W.3d 206, 212 (Tex. App.—Dallas 2002, pet. ref'd) (same). Because the State has unambiguously claimed its appeal concerns an illegal sentence, an appeal authorized by Article 44.01(b), *Mizell* is clearly distinguishable from this case. It is not necessary for this Court to decide whether a notice of appeal is required for an appeal brought under Article 44.01(c).

18

71 S.W.3d 336, 339 (Tex. Crim. App. 2002). In its brief, the State argues that the sentence assessed by the trial court is an "illegal sentence." According to the State, the sentence is an "illegal sentence" because the trial court failed to make a finding on the enhancement allegations and erred in sentencing Baines under Section 12.44 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 12.42, 12.44 (Vernon Supp. 2010).

The Texas Court of Criminal Appeals has held a sentence is not an "illegal sentence" merely because there is no finding on the enhancement paragraphs. In *Harris v. State*, the trial court failed to make a finding on the enhancements and sentenced the defendant within the range of the unenhanced offense. 153 S.W.3d 394, 398 (Tex. Crim. App. 2005). The following day, the trial court recalled the case, found the enhancement to be true, and assessed a more lengthy sentence. *Id.* The Texas Court of Criminal Appeals held that the first sentence was lawfully assessed. *See id.* (concluding second sentence did not qualify as a nunc pro tunc). Thus, the absence of a finding on the enhancements does not render the sentence an "illegal sentence."[6]

---

[6]The trial court is not bound to accept the State's evidence and find the enhancement allegations true. *See Harris*, 153 S.W.3d at 397. The State argues that *Harris* is distinguishable from this case because the defendant in *Harris* pled not true while the defendant in this case pled true. However, this argument concerns the State's claim that the trial court erred in explicitly refusing to make a finding on the enhancements making the sentence illegal. The State failed to preserve error on this issue. As the Texas Court of Criminal Appeals has noted, complaints concerning the procedure leading to the assessment of punishment are not synonymous with a complaint that the sentence is illegal. *State v. Baize*, 981 S.W.2d 204, 206 (Tex. Crim. App. 1998) (State could not appeal untimely election for jury to assess his punishment as an "illegal sentence"); *see State v. Ross*, 953 S.W.2d 748, 752 (Tex. Crim. App. 1997) (concluding State could not appeal absence of an affirmative deadly weapon finding as an "illegal sentence"). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). The Texas Court of Criminal Appeals has noted "errors that are subject to procedural default may not be remedied by the appellate court as unassigned error unless the error was in fact preserved in the trial court." *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). When

The State's remaining complaint is that the trial court erred in sentencing Baines under Section 12.44, which permits a trial court to assess punishment based on the class A misdemeanor punishment range. *See* TEX. PENAL CODE ANN. § 12.44. First, we note that the punishment assessed was within the punishment range of a state-jail felony.[7] Thus, the sentence assessed would not be an "illegal sentence" even if the trial court had chosen not to exercise its discretion to sentence Baines under Section 12.44. Section 12.44 provides two criteria to guide the trial court in exercising its discretion—"the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant." TEX. PENAL CODE ANN. § 12.44. Although Baines has several criminal convictions, the gravity and circumstances of the offense support the trial court's decision to exercise its discretion to sentence Baines under Section 12.44. The trial court abuses its discretion when it acts "without reference to any guiding rules and principles, or acts in a manner that is arbitrary or capricious." *Lam v. State*, 25 S.W.3d 233, 236–37 (Tex. App.—San Antonio 2000, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990)). The trial court did not abuse its discretion in sentencing Baines under Section 12.44.

---

the State asserts error, the burden of preserving error for appellate review rests on the State. *State v. Boyd*, 202 S.W.3d 393, 404 (Tex. App.—Dallas 2006, pet. ref'd). The State made no objection concerning the trial court's explicit refusal to make a finding on the enhancements. The State has failed to preserve the error, if any, of the trial court's explicit refusal to make a finding on enhancements for appellate review. *See* TEX. R. APP. P. 33.1. While we must consider the absence of a finding, we are not considering whether the trial court erred in failing to make a finding.

[7]An individual convicted of a state-jail felony may be imprisoned for a term of not more than two years or less than 180 days. TEX. PENAL CODE ANN. § 12.35(c) (Vernon Supp. 2010). Thus, even if the trial court erred in sentencing Baines based on the range for a class A misdemeanor, the sentence would not be an "illegal sentence" because it is within the punishment range of a state-jail felony.

We note the Texas Court of Criminal Appeals has held that a trial court does abuse its discretion if it sentences a defendant under Section 12.44 when it has found enhancement allegations to be true, thereby increasing the punishment range under Section 12.42(d). *State v. Allen*, 865 S.W.2d 472, 473 (Tex. Crim. App. 1993). We further note that the Texas Court of Criminal Appeals has held a trial court errs in ignoring in an adjudication proceeding enhancement allegations that previously have been found to be true. *State v. Kersh*, 127 S.W.3d 775, 776 (Tex. Crim. App. 2004). This case is distinguishable from *Allen* and *Kersh* because in this case the trial court, without objection, explicitly did not make a finding on the enhancement allegations. Thus, unlike *Allen or Kersh*, the habitual offender statute does not apply to Baines. As discussed above, the absence of a finding on the enhancement allegations does not render the sentence an "illegal sentence." Baines's sentence is not an "illegal sentence."

For the reasons stated, we affirm.


Bailey C. Moseley
Justice


Date Submitted:     August 12, 2010
Date Decided:       November 3, 2010

Publish

21