

IN THE
TENTH COURT OF APPEALS

_____

No. 10-11-00114-CR

DANIEL ESTORAGE O'QUINN,

                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

_____

From the 220th District Court
Hamilton County, Texas
Trial Court No. CR07576

MEMORANDUM  OPINION

Daniel Estorage O'Quinn was convicted of the offense of evading arrest or

detention in a motor vehicle for which he was sentenced to ten years in prison.  TEX.

PEN. CODE ANN. § 38.04(a), (b)(2)(A) (West 2011).  O'Quinn complains that the evidence

was insufficient for the jury to have found beyond a reasonable doubt that (1) he knew a

peace officer was attempting to arrest or detain him while he was driving, and (2) that

he intentionally fled from the officer.  Because we find that the evidence was sufficient,

we affirm the judgment of the trial court.

*Sufficiency*

O'Quinn complains that the evidence was insufficient to establish beyond a reasonable doubt that he knew that a peace officer was attempting to arrest or detain him while he was driving his vehicle. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and

circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

*Evading Arrest in a Vehicle*

To convict him of the charged offense, the State had to prove that while using a vehicle, O'Quinn intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04 (West Supp. 2011). A defendant's knowledge that a police officer is trying to arrest or detain him or her is an essential element of the offense of evading arrest. *Rodriguez v. State*, 799 S.W.2d 301, 302 (Tex. Crim. App. 1990); *Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004) ("[T]he accused must know that the person from whom he flees is a peace officer attempting to arrest or detain him."), *pet. dism'd, improvidently granted*, 193 S.W.3d 903 (Tex. Crim. App. 2006).

*The Facts*

The arresting officer observed O'Quinn driving down a two-lane farm to market road while the officer was sitting at an intersection monitoring traffic. O'Quinn was driving an old Ford pickup that did not have a rear view mirror. O'Quinn showed on radar to be traveling at 65 miles per hour in a 60 mile per hour zone. The officer turned onto the road behind O'Quinn, activated his overhead lights, and began pursuit. When

the officer activated his lights the video recording device in the officer's vehicle began recording the pursuit, and that recording was admitted into evidence. O'Quinn traveled down the road for approximately 24 seconds on the video and then turned onto a dirt road. The officer was traveling at a speed to attempt to catch up to O'Quinn, and turned onto the dirt road approximately five seconds after O'Quinn and activated his siren when O'Quinn turned onto the dirt road. No other vehicles were traveling on the road in either direction.

O'Quinn and the officer traveled at what the officer estimated was approximately 45 miles per hour down the dirt road, which ended at a dairy. The officer testified that in his opinion O'Quinn sped up on the straight portions of the dirt road. At the end of the road, O'Quinn stopped his truck quickly, exited the truck, and took off running away from the officer. O'Quinn was apprehended after a short foot pursuit by the officer. According to the video, the entire pursuit lasted for 68 seconds from the activation of the officer's lights until O'Quinn fled from the officer on foot.

O'Quinn's brother had been a police officer for almost twenty years at the time of O'Quinn's arrest. Officer O'Quinn testified that the truck O'Quinn was driving was not capable of traveling fast, was very noisy, and did not have a rear view mirror. Further, Officer O'Quinn testified that he had seen the video of the pursuit and that in his opinion, it did not rise to the level of evading arrest in a motor vehicle because it was of too short a duration, there were no evasive maneuvers like rapid acceleration or

braking, and O'Quinn stopped at a business in the country rather than a remote location.

*Knowledge of Attempt to Arrest or Detain*

In his first issue, O'Quinn complains that the evidence was insufficient for the jury to have determined that he knew the officer was trying to arrest or detain him. In support of this argument, he cites to *Griego v. State* and *Redwine v. State*. *See Griego v. State*, 345 S.W.3d 742 (Tex. App.—Amarillo 2011, no pet.); *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

*Griego v. State*

In *Griego*, two police officers in separate vehicles were traveling with lights and sirens on in the opposite direction of Griego. *Griego*, 345 S.W.3d at 746. Griego's vehicle matched the description of the vehicle the suspect for which the officers were looking. After rounding a bend, the officers turned around and began pursuit of Griego's vehicle. When they spotted Griego, Griego was turning onto another street. The court of appeals determined that there was little or no evidence that Griego could have seen the officers or known that they were trying to pursue him while traveling down that first street. *Griego*, 345 S.W.3d at 751. By the time the officers reached the street Griego had turned onto, Griego had traveled some distance and was indicating a second turn. The officers turned and were on the same street as Griego for eight seconds before Griego made the second turn. Griego completed that turn and parked in a residential

driveway near where he had turned. Griego exited the car and walked up to the residence holding a beer can when the officers arrived. After the officers arrived, he failed to follow the officers' directions and was arrested. *Griego*, 345 S.W.3d at 747.

The Amarillo Court of Appeals held that the evidence was insufficient for the jury to have determined that Griego knew the officers were attempting to arrest or detain him "as he drove for a matter of seconds for little more than a block." *Griego*, 345 S.W.3d at 753-54. However, we find that *Griego* is distinguishable from the facts before us in that here O'Quinn traveled for approximately 24 seconds down the first road with the officer in pursuit with lights flashing and no other traffic present, and then for an additional 44 seconds down the dirt road using lights and siren where O'Quinn ultimately stopped. The distance traveled was a good distance farther than a city block. Additionally, while Griego casually walked up to a residence upon exiting his vehicle, O'Quinn stopped abruptly, jumped out of his truck, and ran away from the officer. We may infer an individual's mental state from actions and statements during and after an incident. *See Blozinski v. State*, No. 14-07-00664-CR, 2009 Tex. App. LEXIS 2398, at *11-12 (Tex. App.—Houston [14th Dist.] Apr. 2, 2009, no pet.) (mem. op. on reh'g, not designated for publication) (*citing Alexander v. State*, 229 S.W.3d 731, 740 (Tex. App.—San Antonio 2007, pet. ref'd).

*Redwine v. State*

Redwine was driving on a county road and he met a police car going the opposite direction. *Redwine v. State*, 305 S.W.3d 360, 361 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Believing that Redwine was driving "too near the center of the undivided road," the officers turned around to follow Redwine, but did not activate their lights or siren. *Id.* at 361-62. A written statement from Redwine was introduced stating that he wanted to "avoid contact" with the deputies because he had a suspended license. Redwine turned onto a dirt driveway. The officers found the truck empty, but shouted "Sheriff!" and after some time, Redwine walked out of the nearby forest, where he was arrested. After a jury trial, Redwine was convicted for evading arrest using a vehicle. *Id.* at 362.

Redwine's contention was that the police made no show of authority until after he had already exited his vehicle and, therefore, the evidence was legally insufficient to prove he knew, while in his vehicle, that police were attempting to arrest or detain him. *Id.* at 363. The evidence was found to be legally insufficient.

This case is distinguishable, however. The officer turned on his overhead lights almost immediately, and turned on his siren approximately halfway through the chase. O'Quinn can be seen on the video fleeing from his parked vehicle as the officer arrives. There was no show of authority from the officers in *Redwine* until he had exited his vehicle.

Under the facts of this case, we find that the evidence was sufficient for the jury to have found that O'Quinn knew that the officer was attempting to arrest or detain him while he was driving his pickup. We overrule issue one.

*Intentionally Fled*

In his second issue, O'Quinn complains that the evidence was insufficient for the jury to have found that he intentionally fled from the officer in his vehicle because during the pursuit he did not accelerate appreciably, only approximately 30 seconds passed between the time he contends the officer came into view and he stopped his vehicle, and because he promptly stopped at the first appropriate location where he would not disrupt dairy operations.

In addition to proving that a suspect knew that an officer was attempting to arrest or detain him, the State must prove that the suspect intentionally fled from the officer. In determining whether a defendant intended to evade, the relevant inquiry is whether there was an attempt to flee or delay the detention. *Baines v. State*, No. 06-10-00069-CR, 2010 Tex. App. LEXIS 8777 at *13 (Tex. App.—Texarkana Nov. 3, 2010, pet. ref'd). While the length and speed of the chase are factors in considering whether there was an attempt to evade, they are not determinative by themselves. *Id.*

Any delayed compliance can be considered an attempt to evade arrest or detention. *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.) "'[F]leeing' is anything less than prompt compliance with an officer's direction to stop."

*Id.* Even if there is no intent to ultimately evade, intent to evade arrest or detention even for a short time is sufficient to support a conviction for evading arrest with a motor vehicle. *Id.*; *see also Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.) (observing that law does not require high-speed fleeing or even effectual fleeing; it requires an attempt to get away from a known officer of the law).

The jury, as factfinders, could reasonably have determined that O'Quinn did accelerate on the dirt road from the video recording and the officer's testimony. Further, the jury could reasonably have determined that O'Quinn could have stopped at some other place along the road but did not make an attempt to do so. We find that the video recording supports those determinations. The evidence was sufficient for the jury to have determined that O'Quinn intentionally fled from the officer. We overrule issue two.

### Conclusion

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed July 26, 2012
Do not publish
[CR25]