**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00233-CR**
_____

**MATTHEW THOMAS CONDOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR34116**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Matthew Thomas Condos for the third-degree felony offense of evading arrest or detention using a vehicle, with allegations of two prior convictions. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). A jury found Condos guilty. Condos elected to have the punishment tried to the court. After a hearing on punishment, the court found the enhancement allegations true and assessed punishment at twenty-five years' imprisonment. Condos appeals his conviction, and

1

in one issue he argues that the evidence was not sufficient to support his conviction because the record failed to show that he intentionally fled from law enforcement. We affirm.

Evidence at Trial

Testimony of Deputy John Tucker

Deputy John Tucker testified that on January 10, 2018, he worked for the Liberty County Sheriff's Office. Tucker saw Condos that day when Tucker and Deputy Lucy Castro were patrolling the Woodland Hills subdivision in a vehicle marked with Sheriff's Office emblems and equipped with lights and a siren. Tucker described the Woodland Hills subdivision as "very highly populated" and an area of "high drug activity[.]"

Tucker testified that he first saw Condos backing out of a driveway of a house that police had "paid attention to in the past." At first, Tucker observed the vehicle slow down and change gears from reverse to drive. Tucker testified that he knew Condos on sight, that the two made eye contact, and that he knew Condos did not have a valid driver's license. According to Tucker, when he passed Condos, he immediately turned his vehicle around and activated the lights and siren because he knew Condos was driving without a license. Tucker further testified, "I knew -- as

2

soon as my lights and sirens were activated, the vehicle never stopped. It came in contact at the intersection of a stop sign. The vehicle at that point never stopped."

Tucker testified that Condos did not stop but made a left turn. Tucker observed the rear end of Condos's vehicle dip down, which indicated to Tucker that the vehicle was accelerating. Tucker also testified that he observed the vehicle accelerate and go faster than when Condos made the turn and that the vehicle was weaving and driving onto lawns. Tucker described Condos's wheels as "spinning and kicking dirt backwards" when Condos had driven onto a yard, which Tucker saw as a sign Condos was accelerating rather than slowing down. Tucker did not recall seeing any taillights or brake lights. At that point, Tucker had observed multiple traffic violations: "No driver's license, failed to yield at a stop sign, failed to stop at a designated stopping point, and failed to control a marked lane or maintain a lane." According to Tucker, Condos made eye contact with him through the rear-view mirror, was engaging him vocally, and had his hand out of the window with his palm up. At one point, Tucker observed something thrown from the passenger's side of the vehicle. After a drive of three to five minutes, Condos's vehicle came to a stop. According to Tucker, when a law enforcement officer activates lights and siren while following behind a vehicle and the driver never acknowledges and does not stop but rather accelerates, there is a basis for charging the driver with evading arrest or

detention. Tucker agreed that Condos did not give him any trouble when he finally arrested him and that after Condos was in custody, Condos said his brakes were not working. Tucker further testified:

> In everyday citizen circumstances if I turn on lights and sirens and for some reason your vehicle cannot stop, you're probably going to apply your hazard lights.
> You're probably going to try to pull your emergency brake, put it in neutral to stop the vehicle from going forward anymore at that point.
> I have to judge from characteristics of the vehicle and the driver, and that day I did not have characteristics to believe that that driver was trying to stop that vehicle.

Tucker agreed that he did not try to verify whether the brakes in Condos's vehicle worked. State's Exhibit 5 was admitted and played, and Tucker agreed that it was an audio recording of the radio communications from his vehicle that day.

Testimony of Deputy Lucero Castro

Lucero Castro, a deputy with the Liberty County Sheriff's Office, testified that she was riding with Deputy Tucker on January 10, 2018, when they encountered Condos. Castro testified that they were patrolling the Woodland Hills Subdivision, which she described as an area "known for a lot of narcotics." According to Castro, the officers saw Condos's vehicle back out of a driveway, stop, and go forward. Castro recalled that Condos's vehicle proceeded north, and when he did not make a complete stop, Deputy Tucker turned around and turned on lights and sirens.

4

According to Castro, Condos's vehicle did not stop at the stop sign, and after the deputies tried to pull him over, Condos sped up. Castro testified that Condos and his passenger were "just looking down and moving things around in the vehicle[,]" and she saw something tossed out of the passenger side window. Castro did not remember Condos telling Tucker that his brakes were not working, and she did not see brake lights on the vehicle.

Defense Witnesses

Zachary Lewis testified that he sold a vehicle to Condos about a month before Condos's arrest, and the vehicle had a clogged catalytic converter and broken brake lines. According to Lewis, he bought a part needed to repair the brakes, and Condos said he would get them repaired. David, Condos's stepfather, testified that Condos's vehicle had a problem with the brakes ever since Condos bought it, and Condos tried to repair the brakes, but Young did not believe Condos knew how to make the repairs. Young had driven the vehicle back and forth in the yard and reported "[i]t had no brakes." Brenda, Condos's mother, testified that after Condos bought his vehicle, he tried to work on the brakes. Ray Hoover testified that he was a passenger in the vehicle with Condos on January 10, 2018. Hoover further testified that he had helped Condos work on the car that day and he believed the brakes had been repaired until later when Condos hit the brakes and panicked because the vehicle would not

5

stop. According to Hoover, Condos was "hitting on the brakes. We had our hands out the window waving showing [the Deputy]. He was swerving a little bit in and out of the ditch to make it slow down." Hoover testified that eventually the vehicle "just slowed down."

The jury found Condos guilty as charged in the indictment.[1] After a hearing on punishment, the trial court found the enhancement allegations true and assessed punishment at twenty-five years in prison.

Issue

Condos argues that the evidence is not sufficient to support his conviction because the record fails to show that he intentionally fled from law enforcement. According to Condos, he presented "overwhelming evidence" that the brakes on the vehicle he was driving were not functioning properly when Deputy Tucker signaled him to stop. Condos further argues that law enforcement had the opportunity to inspect the vehicle's brakes but failed to do so. Condos does not dispute that he did not immediately slow down his vehicle when Deputy Tucker turned on his

---

[1] On the second day of trial, the court informed the jury that "the defendant has voluntarily absented himself from the[] proceedings[.]" In addition, Condos was not present for the punishment phase of trial, and the court entered a plea of "not true" to the enhancement allegations on Condos's behalf. Condos was present in the trial court for sentencing. Condos does not raise an issue on appeal about his absence from any proceedings in the trial court.

6

emergency lights, and he argues that "[t]he question was whether Appellant acted intentionally in failing to promptly stop after being signaled to do so by Deputy Tucker." Condos contends that "[a] rational trier of fact could not have concluded, beyond a reasonable doubt, that Appellant intentionally fled from Deputy Tucker, where the evidence was overwhelming that the vehicle Appellant was operating had defective brakes."

Applicable Law and Analysis

In reviewing the legal sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Id.* at 902; *see also Jackson*, 443 U.S. at 319.

"A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). As the trier of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony, and on appeal we must give deference to the

jury's determinations. *Brooks*, 323 S.W.3d at 899, 905-06. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* at 899 n.13 (citing *Jackson*, 443 U.S. at 326). On appeal, we only ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a). A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a).

Intent is a question of fact for the jury. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). In determining whether a defendant intended to evade, the relevant inquiry is whether there was an attempt to flee or delay the detention. *Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana 2010, pet. ref'd). Courts may consider the speed, distance, and duration of a pursuit in determining whether a

8

defendant intentionally fled. *See Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.). Any delayed compliance can be considered an attempt to evade arrest or detention, and "fleeing" is anything less than prompt compliance with an officer's direction to stop. *See Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (citing *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)); *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.). Even if there is no intent ultimately to evade, intent to evade arrest or detention even for a short time is sufficient to support a conviction for evading arrest with a motor vehicle. *See Horne*, 228 S.W.3d at 445-46; *see also Mayfield*, 219 S.W.3d at 541 (observing that law does not require high-speed fleeing or even effectual fleeing; it requires an attempt to get away from a known officer of the law).

Deputy Tucker testified that even though he activated his lights and siren, Condos's vehicle never stopped, not even at a stop sign. Tucker testified that he observed Condos's vehicle accelerate. The Deputy also testified that, after the traffic stop, Condos mentioned that his brakes were not working, but in Tucker's experience, a driver without properly-functioning brakes would have turned on hazard lights, pulled the emergency brake, or put the vehicle in neutral to slow down.

Defense witnesses testified that Condos's vehicle had problems with the brakes and that Condos had not been able to repair the brakes.

Although defense witnesses testified that the brakes in Condos's vehicle were not working, the jury, as the sole judge of the witnesses' credibility, could have disbelieved the defense witnesses and believed the State's witnesses. *See Febus*, 542 S.W.3d at 572. The jury could have reasonably concluded that Condos delayed complying with law enforcement's efforts to stop him, and that he evaded arrest or detention by intentionally fleeing from a person he knew was a peace officer who was attempting to lawfully arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a); *Lopez*, 415 S.W.3d at 497; *Horne*, 228 S.W.3d at 446. We overrule Condos's challenge to the legal sufficiency of the evidence and affirm the judgment of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 31, 2019
Opinion Delivered February 26, 2020
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.