NO. 07-09-00206-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 18, 2011

_____

NICK LEE GRIEGO, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B17934-0902; HONORABLE EDWARD LEE SELF, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

A Hale County jury found appellant, Nick Lee Griego, guilty of the third-degree offense of evading arrest or detention using a vehicle and having previously been convicted for evading arrest or detention.[1]  It assessed punishment at ten years' imprisonment.

_____

[1] See TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2011).

Procedural History

On original submission to this Court and prior to <u>Brooks v. State</u>, 323 S.W.3d 893 (Tex.Crim.App. 2010), appellant's contention regarding the state jail felony was limited to a challenge presented in terms of factual sufficiency of the evidence. In our original opinion, we addressed the issues as presented and reversed and remanded the cause to the trial court. However, the State filed its amended petition for discretionary review at a time that coincided with the Texas Court of Criminal Appeals's opinion in <u>Brooks</u> and its elimination of factual sufficiency review. <u>See</u> <u>Brooks</u>, 323 S.W.3d at 895.

Under the authority of Texas Rule of Appellate Procedure 50, we withdrew our opinion to reconsider the instant cause. <u>See</u> <u>Griego v. State</u>, No. 07-09-00206-CR, 2010 Tex.App. LEXIS 8564, at *1–3 (order). Pursuant to <u>Brooks</u>'s proclamation that the standards for reviewing legal and factual sufficiency are indistinguishable and in light of the fact that the Texas Court of Criminal Appeals remanded the case in <u>Brooks</u> to the Waco Court of Appeals for reconsideration of the already-addressed legal sufficiency, we directed the parties to supplement their briefing on the approach to be taken post-<u>Brooks</u> when, as here, only factual sufficiency was raised on original submission.[2]

---

[2] We recognize that sister courts have taken other approaches when presented with cases presenting similar procedural concerns. <u>See</u> <u>Cozzens v. State</u>, No. 06-09-00157-CR, 2010 Tex.App. LEXIS 9336, at *1, *12–13, *13 n.8 (Tex. App.—Texarkana Nov. 24, 2010, pet. ref'd) (concluding that "Texas law no longer recognizes a claim of factual insufficiency of the evidence as a basis for review on appeal" and declining to address appellant's point of error raising only factual sufficiency and not accompanied by a legal sufficiency point of error); <u>Mauldin v. State</u>, No. 08-09-00028-CR, 2010 Tex.App. LEXIS 8979, at *2–3 (Tex.App.—El Paso Nov. 10, 2010, pet. ref'd.) (when appellant's sole issue on appeal challenged the factual sufficiency of the evidence, concluding that, "in the interests of justice, and in light of the <u>Brooks</u> decision, we will construe [the sole issue] as a challenge to the legal sufficiency of the evidence"); <u>see</u>

After having considered the supplemental briefing, we ultimately concluded that appellant's factual sufficiency contentions regarding the state jail felony on original submission raised the sufficiency of the evidence under <u>Brooks</u> and reviewed those contentions and the record under the standard outlined in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). <u>See</u> <u>Griego v. State</u>, 331 S.W.3d 815, 819 (Tex. App.—Amarillo 2010), <u>vacated on other grounds</u>, No. PD-1226-10, 2011 Tex.Crim.App. LEXIS 594 (Tex.Crim.App. May 4, 2011) (per curiam). As the Texas Court of Criminal Appeals noted in vacating our judgment so concluding, we exceeded Rule 50's sixty-day period in which to issue that opinion and were without jurisdiction to do so. <u>See</u> <u>Griego</u>, 2011 Tex.Crim.App. LEXIS 594, at *2. The Texas Court of Criminal Appeals vacated the January 11 opinion, reinstated our original opinion, and remanded the cause to this Court to reconsider the issues "in light of <u>Brooks</u>." <u>Id.</u> at *3.

## Application of <u>Brooks</u>

When the high court remanded the case for our reconsideration in light of <u>Brooks</u>, we presume that the issue surrounding the application of <u>Brooks</u> to this case remains. Upon reconsideration of the issues presented by this case and its timing in relation to <u>Brooks</u>, we conclude that the issue of sufficiency of the evidence as delineated in <u>Jackson v. Virginia</u> is before the Court despite the fact that appellant raised only pre-<u>Brooks</u> "factual" sufficiency on original submission. In the Texas Court of Criminal Appeals's disposition of <u>Brooks</u>, there is a reluctance to presume that a

---

also <u>Heslep v. State</u>, No. 11-09-00226-CR, 2011 Tex.App. LEXIS 4210, at *3 (Tex.App.—Eastland June 2, 2011, no pet. h.); <u>Dickson v. State</u>, Nos. 02-10-00176-CR to 02-10-00178-CR, 2011 Tex.App. LEXIS 1606, *2 n.2 (Tex.App.—Fort Worth Mar. 3, 2011, no pet.).

conclusion made in the pre-Brooks context with respect to factual sufficiency necessarily implies a finding as to legal sufficiency:

> [W]e could decide that the court of appeals necessarily found that the evidence is legally insufficient to support appellant's conviction when it decided that the evidence is factually insufficient to support appellant's conviction. However, primarily because the 'confusing' factual-sufficiency standard may have skewed a rigorous application of the Jackson v. Virginia standard by the court of appeals, we believe that it is appropriate to dispose of this case by sending it back to the court of appeals to reconsider the sufficiency of the evidence to support appellant's conviction under a proper application of the Jackson v. Virginia standard. Cf. Tibbs, 397 So.2d at 1125–26 (abandoning reversals based on weight of the evidence and stating that '[c]ases now pending on appeal in which a court has characterized the reversal as based on evidentiary weight should be reconsidered').

Brooks, 323 S.W.3d at 912. So, for at least two reasons, we reject the State's position that legal sufficiency of the evidence was presumed on original submission: (1) we were not asked to address the legal sufficiency of the evidence supporting the state jail felony on original submission, and (2) presuming that the evidence is legally sufficient is inconsistent with the disposition in Brooks and its recognition that there is potential for confusion in this arena since there is now only one standard to be applied. Brooks's call for reconsideration of the sufficiency in this context dissuades us from disposing of appellant's original issue as having raised nothing for our review.[3] See id.

---

[3] Unlike the Waco court in Brooks, we were not called upon to expressly address the legal sufficiency of the evidence. Though the State advances the position that our holdings in our original opinion are such that legally sufficient evidence must be presumed, we recognize the awkward procedural posture in which this case stands in light of Brooks. Because appellant only raised the factual sufficiency of the evidence with regard to the state jail felony, we made no explicit conclusions regarding the legal sufficiency of the evidence. Simply put, we were not asked to address legal sufficiency on original submission, we did not do so, and we will not, on reconsideration, read the issues raised on original submission as ones that presume that legally sufficient evidence supported the state jail felony offense.

After having reviewed the parties' supplemental briefing and revisited the issues presented in light of Brooks, we will again reverse appellant's conviction for the third-degree felony. Further, having concluded that the evidence is insufficient to sustain a conviction for the lesser-included state jail felony offense, we refuse to reform the trial court's judgment to reflect a conviction for evading arrest or detention using a vehicle. We conclude, however, that the evidence *is* sufficient to sustain a conviction for the misdemeanor offense of evading arrest or detention and, therefore, remand the case to the trial court for a new trial on punishment.

## Factual Background

### The Officers' Accounts

The two pursuing officers, Hall and Erpelding, testified at trial. The two officers, in separate cars, both with their lights and sirens activated, were en route to 717 Milwee in response to a report of a man with a gun.[4] Dispatch provided them the name of the suspect and a description of the vehicle in which he left the address. On their way to 717 Milwee, traveling southwest on El Barrio Road and then west on East Ninth Street, the officers encountered a vehicle traveling in the opposite direction and matching the description of the suspect's car. The officers and appellant met on an approximately 135-degree bend at which point El Barrio Road, running southwest and northeast, becomes East Ninth Street, an east-to-west street. The officers turned around on East Ninth Street, after the bend, headed back east on East Ninth Street and, then, in a northeasterly direction on El Barrio Road. By the time the officers had stopped, turned

---

[4] At the scene, appellant invited the officers to search his vehicle, insisting that he had no gun. The search yielded no gun.

5

around, negotiated the bend in the road, and began traveling east-northeast, appellant had already traveled further northeast on El Barrio Road and was nearing the intersection with Davidson Street, where he would turn left and head due north.

The officers acknowledged that, after they turned around, appellant's vehicle was some distance ahead of them and had turned off El Barrio Road but testified that they were able to see appellant's car. Both officers also testified that they were not certain whether appellant saw them turn around and were not certain whether he saw them heading back in the same direction he was traveling. Additionally, Erpelding testified that he did not know when or if appellant had seen the officers behind him on Davidson Street either. Hall conceded that it is possible that appellant would not have seen the officers turn around on East Ninth Street to travel in the direction he was going. But, Hall explained, most of the time people will pull over or keep watching where the patrol car is going. Hall did not know if appellant saw them turn around to pursue him before appellant turned onto Davidson Street; he was adamant, however, that appellant saw the cars as they met him on the bend traveling in the opposite direction. His testimony offered no further explanation as to how this initial encounter would have served to put appellant on notice that the officers were attempting to arrest or detain him.

When the officers turned north onto Davidson Street, appellant had already signaled a right turn onto Nixon Street, going east.[5] Erpelding testified that he came

---

[5] We may take judicial notice of adjudicative facts, whether requested to do so or not, when those facts are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and we may do so for the first time on appeal. TEX. R. EVID. 201(b), (c), (f); Granados v. State, 843 S.W.2d 736, 738 (Tex.App.—Corpus Christi 1992, no pet.). We are, therefore, authorized to and do take judicial notice that Nixon

6

within a couple of car lengths of appellant's vehicle about one-half to one block before appellant turned right onto Nixon Street. After appellant turned right onto Nixon Street, he made an almost immediate right turn into a residential driveway. As the officers pulled up to the residence, appellant got out of his car and, with beer in hand, walked toward the residence.[6] The officers directed him to stop, and when he did not comply, Hall used a taser on him.

Neither officer could determine the speed of appellant's vehicle. Officer Hall testified that appellant had accelerated to some degree:

> We could tell that it did speed up a little bit; not to a real high rate, but a little bit. Because, like I said, we did observe it accelerate, and the dust was blowing up around the vehicle as it was going down the street.[7]

Hall testified that the officers "had to go pretty fast to catch up to" appellant's vehicle. Erpelding testified that he accelerated as fast as his car would go to catch up with him after the officers turned around. Hall explained that using a turn signal and maintaining a low speed is not conclusive as to an evasion offense. He stressed that appellant "was still evading" when he exited the car and ignored the officers' orders to stop.

---

Street is the second named cross street as one travels north on Davidson Street after having turned north off El Barrio Road in Plainview, Texas. We also take judicial notice of the location, direction, and trajectories of the other streets described during this encounter. See Fernandez v. State, 306 S.W.3d 354, 365 (Tex.App.—Fort Worth 2010, no pet.) (Dauphinot, J., dissenting) (noting that judicial notice can be taken of the location of cities, counties, boundaries, dimensions, and distances because geographical facts are easily ascertainable and capable of verifiable certainty).

[6] Hall conceded that, typically, a suspect who is fleeing will exit his or her car and run into a building or act in some manner to continue to evade the officers.

[7] On cross-examination, Hall conceded that it is typical for drivers to accelerate after a left turn onto another street. Erpelding similarly acknowledged that a driver usually slows down prior to making a turn then speeds up again following the turn.

The Video Recording of the Pursuit

The DVD of the pursuit shows the point at which the officers met appellant's vehicle on the bend and shows the officers turn around, drive through the bend again, and travel back to the northeast on El Barrio Road. At that point, appellant's car is not visible directly ahead of the officers. It is not until the officers turn left onto Davidson Street that we, through the perspective of the in-dash camera, again see appellant's vehicle. From the DVD and the officers' testimony, it appears that this is the first point at which the officers are directly behind appellant and would be visible in appellant's rearview mirror.

As the lead police car turned onto Davidson Street, appellant had driven approximately one and one-half blocks north on Davidson Street and had already signaled a right turn onto Nixon Street. Appellant completed that turn as the officers continued north on Davidson Street. After turning right onto Nixon Street, appellant turned right into a driveway almost immediately. From the time that the officers turned left to go north on Davidson Street and saw appellant's vehicle approximately one and one-half blocks ahead signaling to turn right to the moment appellant pulled into the driveway, approximately seventeen seconds elapsed.

At this point, the in-dash camera remained facing forward and did not record a visual account of the confrontation outside the vehicle. In the audio recording of that interaction, as acknowledged by Erpelding at trial, appellant responded to an unidentified bystander that he did not "even know they were following me." Erpelding

8

then assured appellant that the officers did not say that he was evading them and reiterated that they pulled him over only to investigate the report of a gun in the car.

Concession of Error

A person who evades arrest or detention using a vehicle and having previously been convicted of evading arrest or detention commits a third-degree felony. See TEX. PENAL CODE ANN. § 38.04(b)(2)(A). The State concedes that, to prove appellant guilty of the third-degree felony offense, it was required to introduce evidence of appellant's prior conviction for evading arrest or detention at the guilt-innocence phase of trial and that it failed to do so. See Calton v. State, 176 S.W.3d 231, 234, 236 (Tex.Crim.App. 2005). The State's concession is well-taken; we have reviewed the record and the law and agree that the evidence is insufficient as to the third-degree felony offense. With that, we reverse the trial court's judgment of conviction and render a judgment of acquittal as to the third-degree felony offense.

We next determine whether the evidence is sufficient to support a finding of guilt on the lesser-included offense of evading arrest using a vehicle, a state jail felony.[8]

Sufficiency of the Evidence

Our task now is to determine whether the State sufficiently proved the elements of the state jail felony offense of evading arrest or detention using a vehicle. Generally,

---

[8] If the evidence is sufficient to support a conviction for evading arrest or detention using a vehicle, since such an offense was included in the jury charge, we are authorized to reform the judgment to reflect that appellant was guilty of evading arrest or detention using a vehicle, a state jail felony. See Haynes v. State, 273 S.W.3d 183, 184 (Tex.Crim.App. 2008); Collier v. State, 999 S.W.2d 779, 782 (Tex.Crim.App. 1999).

9

"[a] person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (West 2011). While, ordinarily, the offense of evading arrest or detention is a misdemeanor, it becomes a state jail felony if the "actor uses a vehicle while the actor is in flight." Id. at § 38.04(b)(1)(B). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). There is no statutory definition of the term "flees" as used in section 38.04 though the term is commonly used to mean "to run away often from danger or evil," "to hurry toward a place of security," or "to pass away swiftly." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 478 (11th ed. 2006).

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a

10

rational finding. See id. at 906, 907 n.26 (discussing Judge Cochran's dissent in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review).[9] "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis: State Jail Felony

As we read appellant's argument, his assertions that he did not know the officers were following him challenge the State's evidence showing that he intentionally fled from a person he knew was a peace officer attempting lawfully to arrest or detain him. For a defendant to be found guilty of evading arrest or detention, "it is essential that a defendant know the peace officer is attempting to arrest him." Jackson v. State, 718 S.W.2d 724, 726 (Tex.Crim.App. 1986). See Redwine v. State, 305 S.W.3d 360, 362 (Tex.App.—Houston [14th Dist.] 2010, pet ref'd) (noting that a person commits the offense of evading arrest or detention only if the person "knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority"). We will employ the above-referenced standard of review to determine whether the evidence is sufficient to establish that, while he was using a vehicle, appellant knew the officers were attempting to arrest or detain him.

---

[9] We note that this Court has at times quoted Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988), for the proposition that we had to uphold the verdict of the jury unless it was irrational or unsupported by more than a mere modicum of evidence. We view such a statement, insofar as a modicum of evidence being sufficient evidence, as contrary to a rigorous application of the Jackson standard of review urged by the Court in Brooks.

11

We first visit some relevant cases concerning this issue in a sufficiency of the evidence context. The Fourteenth Court of Appeals examined the sufficiency of the evidence when an appellant argued that he was traveling too slowly over too short a distance to have been fleeing from a pursuing officer. See Blozinski v. State, No. 14-07-00664-CR, 2009 Tex.App. LEXIS 2398, at *8 (Tex.App.—Houston [14th Dist.] Apr. 2, 2009, no pet.) (mem. op. on reh'g, not designated for publication). The court disagreed, finding the following evidence sufficient:

> Officer Arena testified that after he turned on his overhead lights, made a u-turn to follow appellant, and activated his siren momentarily to indicate that he was pursuing appellant, appellant continued to accelerate away and then turned onto Princeton Drive. On Princeton, appellant began to alternately brake and accelerate erratically, 'like he didn't know what to do,' ultimately driving off the end of the road into a wet grassy area and spinning his tires. When Arena pulled behind appellant, appellant reversed towards Arena's vehicle, causing Arena to back away to avoid a collision. Appellant then accelerated forward again toward the end of the road, running partially off the road before finally stopping halfway on gravel and halfway on grass.
>
> Additionally, appellant himself testified that he saw Officer Arena's lights come on before he ever turned onto Princeton. Appellant said that when he saw the officer's lights come on, he (appellant) 'took off' and turned onto Princeton. Appellant admitted that once he turned, he could see Officer Arena's vehicle and overhead lights in his rearview mirror. Thus, by appellant's own admission, he knew at this point that Arena wanted him to stop.

Id. at *9–10; see Rogers v. State, 832 S.W.2d 442, 444 (Tex.App.—Austin 1992, no pet.) (finding evidence sufficient and observing that courts should treat direct and circumstantial evidence of an appellant's knowledge with equal dignity).

In contrast, the evidence was legally insufficient in Redwine. There, the evidence showed that the patrol car met Redwine's car traveling in the opposite direction on a rural asphalt road. Redwine, 305 S.W.3d at 361. The deputies turned their vehicle

12

around and pursued Redwine for driving too near the center of the undivided road. Id. "From a distance, they followed [Redwine]'s truck along the county road and then onto the dirt driveway." Id. Initially, one of the officers testified that they had activated the vehicle's emergency lights and siren. Id. at 364–65. That testimony was undermined, however, by the other officer and by the absence of an in-dash camera recording of the events. Id. at 361. In fact, the other officer testified the deputies opted not to activate the lights and siren so that they would not prompt Redwine to elude them; the court viewed this as an attempt to conceal their intent to detain Redwine. Id. When the officers arrived at the end of the dirt driveway, they discovered Redwine's unoccupied truck and began shouting to identify themselves as sheriff's deputies. Id. at 362. Redwine, who had exited the truck and run into the woods, eventually returned to his truck and was arrested. Id.

On appeal, the State pointed to Redwine's written statement that he had turned onto the dirt driveway to avoid further "contact" with police as evidence he knew the officers were attempting to arrest or detain him. Id. at 364. The court disagreed, making the distinction between hoping not to see the deputies again and knowing that the deputies were attempting to detain him. Id. Central to the court's analysis in Redwine was the evidence that suggested, contrary to one officer's equivocal testimony, the officers had not activated their emergency lights or siren. Id. at 365–66. The only evidence that suggested Redwine had failed to yield to a show of authority was this "hesitant" testimony regarding the activation of emergency lights and siren. Id. at 367. Noting that the officer himself was uncertain as to whether the lights and siren were activated, the court concluded that there was legally insufficient evidence that

13

Redwine evaded arrest or detention *using a vehicle*. Id. at 367–68. (Emphasis in original). "[I]n the absence of other evidence, the jury could not translate [the officer]'s uncertainty into belief beyond a reasonable doubt." Id. at 368.

We note that, while speed, distance, and duration of pursuit may be factors in considering whether a defendant intentionally fled,[10] no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent. See Mayfield v. State, 219 S.W.3d 538, 541 (Tex.App.—Texarkana 2007, no pet.) (observing that law does not require high-speed fleeing or even effectual fleeing; it requires an attempt to get away from a known officer of the law); see also Robinson v. State, Nos. 13-10-00064-CR, 13-10-00065-CR, 2011 Tex.App. LEXIS 1844, at *14–15 (Tex.App.—Corpus Christi Mar. 10, 2011, no pet.) (concluding that, even though appellant only drove approximately three blocks at slow speed, her own testimony established that she had seen police lights but had refused to stop because she was "afraid"). We now examine, the evidence concerning these factors, among others, that concern appellant's mental state.

---

[10] We note a number of instances in which speed and distance of the pursuit, though not conclusive, were relevant to the sufficiency of the evidence. See Britt v. State, No. 14-06-00131-CR, 2007 Tex.App. LEXIS 3148, at *9–10 (Tex.App.—Houston [14th Dist.] Apr. 26, 2007, pet. ref'd) (mem. op., not designated for publication) (holding evidence was sufficient where testimony showed defendant "drove his vehicle a significant distance" with a patrol car in pursuit); Luna v. State, No. 04-05-00518-CR, 2006 Tex.App. LEXIS 5779, at *5 (Tex.App.—San Antonio July 5, 2006, no pet.) (mem. op., not designated for publication) (holding evidence was sufficient where officer pursued defendant for four miles); Hobyl v. State, 152 S.W.3d 624, 628 (Tex.App.— Houston [1st Dist.] 2004, pet. dism'd) (holding evidence was sufficient to sustain conviction where officer testified defendant had accelerated and was followed for three miles at 110 miles per hour).

The instant case presents a factual scenario similar to that presented in Redwine. Here, neither officer testified that appellant saw or should have been able to see them in pursuit of him until the point at which they turned in behind appellant on Davidson Street; in fact, each testified that he was uncertain whether appellant saw him. In the absence of other evidence, the jury could not translate their uncertainty into belief beyond a reasonable doubt that appellant did see the officers in pursuit prior to their left turn onto Davidson Street. See Redwine, 305 S.W.3d at 368. And there appears to be no "other evidence" in the record that would support the conclusion that appellant knew the officers were attempting to arrest or detain him. Erpelding testified that he came within a couple of car lengths of appellant's vehicle only one-half to one block before appellant turned onto Nixon Street. So, after the officers turned onto Davidson Street, they were following behind appellant's vehicle for, at the maximum, one block.

The DVD shows approximately seventeen seconds elapsed from the time the officers turned onto Davidson Street to the time that appellant pulled into the driveway off Nixon Street. Of that seventeen-second period, the officers were directly behind appellant, though at some distance, on Davidson Street for approximately eight seconds before appellant completed his already-signaled turn onto Nixon Street. During the remainder of the seventeen seconds, the officers were continuing north on Davidson Street, and appellant was continuing eastward on Nixon Street and preparing to turn into the driveway. As the officers turned right onto Nixon Street, appellant was turning into the driveway. So, realistically, the officers were not directly visible to appellant for the entire seventeen seconds. That is to say, of the elapsed time of seventeen seconds, the officers would have been visible in appellant's rearview mirror for

15

approximately eight seconds. That period of seconds is the measure of time in which appellant could have reasonably discovered that the officers were attempting to arrest or detain him.

Hall's insistence that appellant did see them when the officers met appellant's vehicle on the bend of East Ninth Street/El Barrio Road does not reasonably support the jury's verdict that appellant knew the officers were attempting to arrest or detain him. Both officers testified that they had already activated their lights and sirens on the police cars. The audio portion of the recording confirms this. At first glance, this might appear to distinguish the instant case from Redwine. However, it is important to note that the officers were traveling in the opposite direction from appellant when appellant would have been able to take notice of the lights and sirens. Appellant, having met the officers traveling in the opposite direction with their lights and sirens already activated, could not have known from that encounter that the officers were attempting to arrest or detain him.[11] To the contrary, officers who were traveling in the opposite direction using lights and sirens would appear to be responding in that direction to another matter.

The DVD shows the precise point at which the officers and appellant met on the bend. The officers traveled through the bend and were on East Ninth Street when they turned around. At that point, appellant had traveled well past the bend on El Barrio Road in the other direction and either had already turned or was about to turn off El Barrio Road onto Davidson Street. Consistent with the officers' uncertainty as to

---

[11] We also reiterate that, contrary to the report communicated to the officers, no gun was found on appellant's person or in his car. This evidence would further undermine the State's position that appellant should have known or suspected that the officers traveling in the opposite direction were attempting to arrest or detain him.

16

whether appellant saw them following him, the DVD suggests that the officers were not behind appellant such that he would have been able to see them turn around or traveling in pursuit of him on the road on which they first met. The positions of the three vehicles, following the officers' u-turns, suggest that the officers may have been visible, if visible at all, over appellant's left shoulder at some distance as appellant traveled north on Davidson Street. The officers testified that they were able to see where he turned. Nothing, however, shows that appellant, having already turned left onto another road, and whose vision in the direction of the officers would have been limited to what he could see in his periphery or in his rearview mirror, would have been able to see the officers and conclude that they were now traveling in the same direction as he was and were attempting to arrest or detain him.

Nothing in the record suggests that appellant was speeding or driving in an erratic manner. There is testimony that he accelerated to some degree after he turned. The officer conceded, however, that deceleration before a turn followed by acceleration after a turn is consistent with regular driving. Evidence that the officers had to accelerate to catch up with appellant is also not necessarily conclusive that appellant was evading arrest or detention. The officers testified and the DVD shows that the officers had to turn around after the bend in the road and then accelerate to make up the distance that would naturally occur when a vehicle travels in the opposite direction for some time. Nothing prior to the officers' left turn onto Davidson Street establishes that appellant knew the officers were attempting to arrest or detain him.

We turn now to the evidence of the incident from the moment the officers turned onto Davidson Street to travel north in the direction that appellant had turned. The

17

officers testified that, after turning onto Davidson Street, they saw that appellant had already signaled to turn right onto Nixon Street. Indeed, the DVD seems to confirm this testimony and seems to show that appellant had slowed to some degree to make that turn as evidenced by what appear to be brake lights. The officers continued north on Davidson Street toward appellant, who was preparing to turn right, leaving us with evidence that officers were directly behind appellant with their lights and sirens on for one-half to one block before appellant turned onto Nixon Street, immediately pulled into the residential driveway, exited the car, and began walking up to the residence.

Evidence that appellant got out of his car and, instead of running or hiding, began walking toward the residence while carrying a beer also indicates that he did not know officers were attempting to arrest or detain him. We may infer an actor's mental state from actions and statements during and after the incident. See Blozinski, 2009 Tex.App. LEXIS 2398, at *11–12 (citing Alexander v. State, 229 S.W.3d 731, 740 (Tex.App.—San Antonio 2007, pet. ref'd), and concluding that apologetic and explanatory statements that appellant was "sorry" and "just wanted to get away from you" further supported the conclusion that he had intentionally fled from the officer).

The State points to appellant's failure to comply with officers' orders once he exited the car as evidence that appellant knew the officers were attempting to arrest or detain him. In response to the State's contention, we initially observe that appellant's apparent refusal, upon exiting the vehicle, to comply with the officers' orders, of which we have limited testimony and only audio recording, is not an element of evading arrest or detention *using a vehicle*. Examining this evidence, however, as the State suggests, as evidence of appellant's intent while he was in the vehicle, we conclude that it

18

remains insufficient to enable a jury to rationally conclude that appellant knew, as he drove his vehicle, that the officers were attempting to arrest or detain him prior to his arrival at the residence. The State's focus on this evidence ignores that appellant was walking—not running or hiding—and doing so while carrying a beer. Appellant's statement that he did not "even know" the officers were following him also suggests he did not have the requisite knowledge. Appellant's noncompliance with the officer's commands may be probative of another offense but lends very little, if anything, to establish that appellant knew, as he drove for a matter of seconds for little more than a block, that the officers were attempting to arrest or detain him. Such evidence is insufficient to enable a jury to conclude beyond a reasonable doubt that appellant knew, prior to exiting his vehicle, that the officers were attempting to arrest or detain him.

In summary, we have considered the following evidence in our review: (1) the absence of affirmative evidence that appellant should or could have seen the officers turn around to pursue him; (2) the route of the "pursuit," including the parties' locations and characteristics of the road that would make it physically unlikely or impossible that appellant could have seen the officers turn around to pursue him; (3) the distance over which the officers were directly following appellant and the seconds that elapsed between the time the officers first began to follow appellant and the time he pulled into the driveway; (4) the unremarkable speed at and manner in which appellant appeared to drive; and (5) appellant's conduct and statements upon exiting the car at the residence.

Evidence that the officers were directly behind appellant for one-half to one block such that he would have had a maximum of seventeen seconds in which to determine

19

that the officers were attempting to arrest or detain him and respond appropriately is insufficient in character, weight, and amount to enable the jury to conclude beyond a reasonable doubt that appellant knew the officers were attempting to arrest or detain him. Because the evidence is insufficient to show this essential element of the offense, we will not reform the trial court's judgment to reflect conviction of the state jail felony offense.

Analysis: Misdemeanor

In his supplemental briefing, appellant maintains that the evidence is also insufficient to show that appellant committed the base offense of evading arrest or detention, a misdemeanor. Just as it must when trying to prove a felony evasion offense, to prove a defendant guilty of the misdemeanor base offense, the State must show that a defendant knew the officers were attempting to detain him or her. See Jackson, 718 S.W.2d at 726. And it is on this point that that the evidence outlined earlier failed with respect to evading arrest while using a vehicle. With respect to the misdemeanor offense of evading arrest or detention, however, our analysis is different.

The record shows that appellant got out of his vehicle, began walking up to the residence, and failed to comply with the officers' orders to stop. So, looking at the evidence of appellant's conduct after the officers gave him directions to stop, we conclude that a jury could have found beyond a reasonable doubt that appellant's noncompliance following the officers' directives to stop was sufficient to satisfy the elements of the misdemeanor offense.

The distinction to be drawn here is one of timing.[12]  The evidence before us is not sufficient to show that appellant knew, *before getting out of his car*, that the officers were attempting to arrest or detain him.  But, *after the officers ordered him to stop*, appellant knew or should have known that the officers were attempting to arrest or detain him.  That is, appellant's noncompliance with the officers' orders was insufficient to show previous knowledge that the officers were attempting to arrest or detain him but was sufficient to show that, after repeated orders to stop, appellant knew or should have known that the officers were attempting to arrest or detain him.  The evidence shows that the officers made a show of authority and that appellant refused to yield to it.  See Redwine, 305 S.W.3d at 362.

It was after appellant got out of the car and after the officers ordered him to stop that appellant knew the officers wanted to arrest or detain him.  His continued effort— albeit atypically unenthusiastic—to continue on his way to the residence in spite of the officers' orders was sufficient to show that appellant evaded arrest or detention.  See Sartain v. State, No. 03-09-00066-CR, 2010 Tex.App. LEXIS 3877, at *8 (Tex.App.—

_____

[12] The State has pointed out that, in our original opinion, we failed to emphasize that appellant seemingly acknowledged his commission of the offense when he admitted to the officer that he should have stopped.  The State maintains that by pointing out, instead, that appellant stated that he did not realize the officers were following him, we stepped outside our role as a reviewing court and made credibility determinations or re-weighed contradictory statements.  In response to this position, we point out that, in the sometimes cacophonous interaction immediately following appellant's exit from the vehicle, we have not been able to hear a clear acknowledgement of wrongdoing.  To the extent there is one, we would respond that, considering the context, such an acknowledgement would likely have referred to his failure to follow the officers' orders once outside the vehicle.  The officers assured him that they were not accusing him of evasion: "We never said you were evading us out here in this vehicle."  And they then repeated the report of a gun in the car.  Based on the officers' assurances, appellant would have no reason to admit that he should have stopped in his car.

Austin May 19, 2010, no pet.) (mem. op., not designated for publication) (observing that conduct may still be evading "[h]owever ineffectual appellant's brief 'flight' may have been"); see also Diaz v. State, No. 08-09-00002-CR, 2010 Tex.App. LEXIS 6700, at *5 (Tex.App.—El Paso Aug. 18, 2010, no pet.) (not designated for publication) (concluding that evidence was sufficient when "both officers testified that Appellant walked away after being questioned at the gate despite their commands to stop").

Based on our conclusion that the evidence is sufficient to support the conclusion that appellant committed the misdemeanor offense of evading arrest or detention, we modify the trial court's judgment to reflect that appellant was convicted of the class B misdemeanor offense of evading arrest or detention[13] and remand the cause to the trial court for a new trial on punishment.

Conclusion

Having concluded that the evidence was insufficient to sustain appellant's conviction for the third-degree felony evading offense, we reverse the trial court's judgment and render judgment of acquittal as to the third-degree felony of evading arrest or detention using a vehicle and having previously been convicted or evading arrest or detention. Having concluded that the evidence is insufficient to support

---

[13] Although the district court would not ordinarily have jurisdiction over a trial on misdemeanor charges, it retains jurisdiction here over this offense as a lesser-included offense of the felony offense alleged in the indictment. See Golden v. State, 833 S.W.2d 291, 292 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (citing Mueller v. State, 119 Tex.Crim. 628, 43 S.W.2d 589 (Tex.Crim.App. 1931), and concluding that "[t]he jurisdiction of the district court, having attached by reason of the indictment for the felony offense of theft, retained jurisdiction for the lesser included misdemeanor offense of theft").

reformation of the trial court's judgment to reflect that appellant was guilty of the state jail felony conviction of evading arrest or detention using a vehicle, we do not reform the judgment. We do find that the evidence was sufficient to support reformation of the judgment to show that appellant was guilty of the misdemeanor offense of evading arrest or detention. We reform the judgment to reflect that appellant was guilty of the class B misdemeanor offense[14] of evading arrest or detention and remand the cause to the trial court for a new trial on punishment.[15]


                                         Mackey K. Hancock
                                              Justice


Publish.

---

[14] The Texas Legislature amended section 38.04 of the Texas Penal Code in the 2009 legislative session, elevating the base offense under section 38.04 from a class B misdemeanor to a class A misdemeanor and adding an additional ground for enhancement to a state jail felony. See Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, 2009 Tex. Gen. Laws 4385, 4385–86 (prior version at TEX. PENAL CODE ANN. § 38.04). Because the indictment here was filed in February 2009, the pre-amendment version of section 38.04 would apply, making the offense a class B misdemeanor.

[15] Further, we deny that portion of the State's previously-filed motion carried with the case in which the State asks this Court to affirm the trial court's judgment.