**Affirmed and Memorandum Opinion filed June 26, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00685-CR

---

### DEMETRIUS KOCHEE DANIELS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 351st District Court
### Harris County, Texas
### Trial Court Cause No. 1364037

---

## MEMORANDUM OPINION

Appellant Demetrius Kochee Daniels appeals his conviction for evading arrest or detention with a vehicle, asserting that the evidence is legally insufficient to prove that he intentionally fled from a law enforcement officer he knew was attempting to arrest or detain him. We affirm.

### BACKGROUND

On June 11, 2012, a black Bentley and its keys were stolen from an

automotive shop where it had been left by the owner for repair to the air conditioning system.

Approximately four months later, on October 3, 2012, Officer Frank Medina of the Houston Police Department was working as a private security officer for an apartment complex in Southeast Houston. Medina first noticed a man walking in the parking lot of the apartment complex that he had not seen previously in the complex. This man was later identified as appellant. Next he noticed a Bentley parked in the apartment parking lot with temporary paper license plates. Medina called Sergeant Robert Ruiz of the Houston Police Department, and asked him to run the paper tag through the computer because he had not seen the Bentley parked in that apartment complex. The computer search revealed that the paper tag was not valid. Medina checked the Vehicle Identification Number and learned from Ruiz that the car had been reported stolen. Medina asked Ruiz to respond to the apartment complex and aid in the investigation because Medina was in his personal vehicle, not a marked patrol car.

Before Ruiz arrived, Medina saw appellant unlock the Bentley, get into the driver's seat, and drive away. Medina followed the Bentley from a distance out of the parking lot. When Ruiz arrived in his patrol car, Medina pointed out the Bentley to Ruiz. Ruiz was able to identify the vehicle because appellant accelerated when the patrol car arrived. Ruiz made a U-turn to pursue the Bentley and turned on his emergency lights and siren.

Sergeant Ruiz testified that he responded to Medina's call in his marked patrol car. As he drove toward the apartment complex he saw the Bentley turning onto a residential street at a high rate of speed. Ruiz made a U-turn to pursue the vehicle and activated his emergency lights and siren "to catch up." While Ruiz was pursuing the vehicle, one other patrol unit arrived to aid in the pursuit. The

2

additional patrol car also activated its emergency lights and siren. Ruiz saw the Bentley run three stop signs in the residential neighborhood before it entered the Gulf Freeway. Ruiz was driving between 60 and 80 miles per hour in an effort to catch up, but was unable to do so. After the Bentley entered the freeway, Ruiz was unable to maneuver around traffic to stop the vehicle. Ruiz directed two other patrol cars to different routes in an effort to catch up, but eventually terminated the pursuit for bystander safety reasons. Ruiz estimated the pursuit took approximately two to three minutes and covered three to four miles.

Through a subsequent investigation, Ruiz learned that the vehicle was still listed as stolen, and learned appellant's identity and address. When officers arrived at the address to execute an arrest warrant, appellant attempted to evade arrest and climbed out of a window. Appellant fled on foot, but was eventually apprehended. After arresting appellant, officers searched the residence, and discovered the Bentley parked behind the house.

Appellant's girlfriend, Deshana Myers, testified to a different version of events. Myers testified that she was the owner and driver of the Bentley on the day of the pursuit. She drove appellant to the apartment complex to pick up pain medication from a friend. Myers stepped out of the vehicle to smoke a cigarette; when appellant returned, they drove away. She saw Ruiz's patrol car, but did not see emergency lights or hear a siren. Myers was driving approximately 80 miles per hour because she was late to pick up her daughter from cheerleading practice. Myers testified that she purchased the vehicle from an individual named Jimmy Valdero for $15,000. Myers produced a bill of sale and receipts to the prosecutor, but those items were not introduced into evidence.

Appellant was convicted of evading arrest or detention with a motor vehicle. After pleading true to two prior convictions, appellant was sentenced to

confinement for 40 years in prison. In a single issue on appeal appellant challenges the sufficiency of the evidence demonstrating that he intentionally fled from a law enforcement officer he knew was attempting to arrest or detain him.

## STANDARD OF REVIEW

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (*citing Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

## ANALYSIS

To hold that evidence is legally sufficient to sustain a conviction for evading arrest or detention with a vehicle, the evidence must demonstrate that appellant, while using a vehicle, intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him. *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); Tex. Penal Code Ann. § 38.04 (West Supp. 2013). A person violates Section 38.04 only if he knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority. *Redwine*, 305 S.W.3d at 362.

Appellant argues that the limited distance and duration of the police chase is evidence supporting his claim that he did not know he was being pursued by law

4

enforcement officers. Specifically, appellant argues that Ruiz, the only pursuing officer to testify, testified that he was unable to get close enough to the fleeing vehicle to identify the driver at the time of the pursuit. Appellant infers from this testimony that Ruiz, in his patrol vehicle with activated lights and siren, was not close enough to appellant for appellant to know he was being pursued by law enforcement officers.

Appellant cites *Griego v. State*, 345 S.W.3d 742 (Tex. App.—Amarillo 2011, no pet.), and *Redwine v. State*, 305 S.W.3d at 360, in support of his argument that he was unaware the officer was attempting to arrest him. The facts presented in each of these cases are distinguishable from the facts of this case in that in *Griego* the duration of the pursuit was so short the appellant could not have known he was being pursued, and in *Redwine*, the officers did not activate their emergency lights and siren.

In *Griego*, two officers were on their way to a house with their lights and sirens activated in response to a report of illegal activity when the officers met the defendant traveling the opposite direction in a vehicle matching the suspect's car. 345 S.W.3d at 746. The officers turned around at a bend in the road and followed the defendant for approximately 17 seconds to a residential driveway. *Id.* at 747–48. As the officers pulled up to the residence, the defendant got out of the car, and walked toward the residence, at which time the officers ordered him to stop. *Id.* at 747. When the defendant did not comply, an officer used a taser to subdue him. *Id.* The court in *Griego* concluded that the evidence was not sufficient to show the defendant knew before getting out of his car that the officers were attempting to arrest him. *Id.* at 752–53. However, the court concluded that the defendant knew or should have known that officers were trying to arrest him after they ordered him to stop. *Id.* at 755.

In *Redwine*, the defendant was driving on a rural road when he encountered a patrol car driving in the opposite direction. 305 S.W.3d at 361. The officers in the patrol car decided to turn around and pursue the defendant for driving too near the center of the road, but the officers never activated their emergency lights and siren. *Id*. The officers followed the defendant's vehicle onto a dirt driveway where they found the vehicle unoccupied. *Id*. at 362. They exited the patrol car and shouted, "Sheriff!" *Id*. The defendant eventually returned on foot to his vehicle where he was arrested. *Id*. This court concluded the evidence was legally insufficient to support the conviction for evading arrest with a vehicle because there was no evidence that appellant evaded arrest while he was in his vehicle. *Id*. at 362, 368.

By contrast, in this case, Ruiz was traveling toward appellant when he made a U-turn and activated his lights and siren. Prior to the U-turn and activation of lights and siren, appellant had been driving at a normal rate of speed. Appellant accelerated and turned onto a side street as Ruiz made the U-turn and activated his lights and siren. Ruiz and two other officers in a patrol car, each with activated lights and sirens, pursued appellant through a residential neighborhood at speeds in excess of 60 miles per hour. Ruiz explained, "Traffic was heavy and I had to go in and out of traffic to try to catch up to the vehicle. The Bentley was moving very fast." Appellant did not stop the vehicle while being pursued by patrol cars using emergency lights and sirens.

Speed, distance, and duration of pursuit may be factors in considering whether a defendant intentionally fled. *Griego*, 345 S.W.3d at 751. In this case, appellant was driving through a residential area at speeds in excess of 60 miles per hour. Although the distance and duration of pursuit were relatively short, Ruiz explained that he terminated the pursuit due to the volume of heavy traffic and desire for bystander safety. A rational trier of fact could consider the speed at

which appellant was driving in addition to the facts that he increased his speed after the U-turn, ran three stop signs, and was pursued by more than one patrol car for three to four miles through a residential area, in determining whether appellant fled from a person he knew to be a police officer attempting to lawfully arrest or detain him. *See* Tex. Penal Code § 38.04.

Viewing the evidence in the light most favorable to the verdict, and drawing reasonable inferences therefrom, a rational jury could have determined beyond a reasonable doubt that appellant knew while he was driving the vehicle that a peace officer was attempting to lawfully arrest or detain him. *See Jackson*, 443 U.S. at 319. We overrule appellant's sole issue and affirm the trial court's judgment.


/s/     William J. Boyce
          Justice


Panel consists of Justices Boyce, Busby, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).