COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| MARTIN HERRERA, | | No. 08-17-00043-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20140D05440) |
| | § | |

## **O P I N I O N**

A jury convicted Appellant Martin Herrera of evading arrest or detention by use of a vehicle. Appellant's sole complaint on appeal is that the evidence is insufficient to support the conviction. We disagree and affirm.

## BACKGROUND

This case arises out of what could have been a routine traffic stop. Instead, the circumstances led the State to indict Appellant for evading arrest or detention in a vehicle. The State also indicted Appellant for retaliation when he later made threatening statements to the arresting police officer. The guilt-innocence phase of the trial featured just one witness--the police officer who pulled Appellant over, and against whom Appellant made the threats. The jury was also aided by a dashcam video that showed Appellant twice come to a stop and then twice pull away from a marked police unit with its emergency flashers engaged. The jury returned a guilty

verdict on the evading charge by use of a vehicle. The jury was unable to reach a verdict on the retaliation charge, which has subsequently been dismissed.

The felony evading charge was enhanced through two prior felony convictions. The punishment phase, tried to the judge, included the State's evidence of Appellant's several prior convictions, a family assault/breaking and entering event, and Appellant's gang affiliation. In response, Appellant offered evidence showing a positive relationship with his family. The trial judge found both enhancement paragraphs true and sentenced Appellant to a prison term of sixty years.

Appellant' sole point of error contends the evidence is legally insufficient to sustain the jury's verdict on the evading charge.

## STANDARD OF REVIEW

Evidence is legally sufficient when, viewed in the light most favorable to the verdict, *any* rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

The jury is the sole judge of credibility and the weight attached to the testimony of each witness. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). It is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. The jury also may choose to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). When the record supports

2

conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs*, 434 S.W.3d at 170; *Carrizales v. State*, 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013), *citing Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Each fact need not point directly and independently to the guilt of the appellant, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper*, 214 S.W.3d at 13.

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.*" *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). Nonetheless, if a rational fact finder could have found the defendant guilty, we will not disturb the verdict on appeal. *Fernandez v. State*, 479 S.W.3d 835, 838 (Tex.Crim.App. 2016).

## EVADING

Section 38.04 of the Penal Code criminalizes "intentionally flee[ing] from a person [the actor] knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX.PENAL CODE ANN. § 38.04(a)(West 2016). The misdemeanor offense is elevated to a felony, when among other things, the person uses a "vehicle or watercraft while the actor is in flight[.]" *Id.* at § 38.04(b)(1)(B).

The offense has three essential elements: (1) the actor knows that a law enforcement officer (2) is lawfully attempting to arrest or detain him, and (3) the actor flees. *Id.* The act of fleeing does not require a high-speed chase, nor even that the effort to flee is effectual. *Mayfield v. State*,

3

219 S.W.3d 538, 541 (Tex.App.--Texarkana 2007, no pet.). "It requires only an attempt to get away from a known officer of the law. Thus, under the law, fleeing slowly is still fleeing." *Id.* Stated otherwise, fleeing "is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex.App.--Texarkana 2007, no pet). Speed, distance, and duration of the pursuit are all factors in determining whether the actor intentionally fled, but "no particular speed, distance, or duration is required to show the requisite intent." *Griego v. State*, 345 S.W.3d 742, 751 (Tex.App.--Amarillo 2011, no pet.).

The actor must also know that a police officer is trying to arrest or detain him. *Jackson v. State*, 718 S.W.2d 724, 726 (Tex.Crim.App. 1986); *Duvall v. State*, 367 S.W.3d 509, 511 (Tex.App.--Texarkana 2012, pet. ref'd). We may infer an actor's mental state from his actions and statements during and after the incident. *Cf. Griego*, 345 S.W.3d at 753 (finding no circumstances supported knowledge element) *with Blozinski v. State*, 14-07-00664-CR, 2009 WL 7098572, at *1 (Tex.App.--Houston [14th Dist.] Apr. 2, 2009, no pet.)(mem op. on rehearing, not designated for publication)(defendant's actions in moving car once stopped and statement "I'm sorry. I'm sorry. . . . I just wanted to get away from you" supported finding that defendant had intentionally fled from the officer trying to effectuate stop).

## DISCUSSION

A reasonable jury could have concluded that Appellant knew a peace officer was attempting to detain him, and that in the face of that knowledge, Appellant fled.

The State presented its case through the testimony of Patrol Officer Danny Conway. His police cruiser was equipped with a camera that also documented the stop. Just after mid-night on September 29, 2014, Officer Conway was patrolling on Dyer Street, a busy four lane road with two lanes of travel in each direction. Officer Conway was in uniform, and his car was distinctively

4

marked as an El Paso Police Department vehicle. As he passed a bar, he saw Appellant pull out of the bar's parking lot with his vehicle lights off. When Appellant did not turn his lights on, Officer Conway executed a U-turn and accelerated his vehicle to catch up to Appellant.

Appellant had also accelerated his vehicle. He then attempted to make a left hand turn onto Mountain Street, a side road leading into a residential neighborhood. Appellant missed the turn, however, and swung wide jumping the curb, such that his car was stopped and partially protruding onto Dyer Street. Officer Conway pulled up behind Appellant's car with his overhead emergency lights engaged. Appellant then drove his vehicle off the curb and he stopped about half-way down the block of Mountain Street. Officer Conway's cruiser pulled behind him, with its emergency lights and a spotlight engaged.

After about five seconds, however, Appellant drove off. At the next cross street, Appellant turned right without signaling. Officer Conway pursued, and Appellant then stopped a third and final time almost at the end of the short block. Officer Conway exited his vehicle, drew his service revolver, and had Appellant exit his vehicle. While doing so, Appellant repeatedly stated, "I know I f\*\*ked up. I'm drunk. I stole a car at the bar."[1]

Much of Appellant's argument on appeal turns on a misinterpretation of Officer Conway's testimony. Appellant argues that Office Conway unequivocally agreed that Appellant was not fleeing. We simply do not read the record that way. When officer Conway was cross-examined about the time when Appellant first came to a stop--as he was hung up on the curb on Dyer and Mountain-- the officer conceded that it was not improper for Appellant to have pulled out of the traffic flow on Dyer:

> [DEFENSE COUNSEL]: Okay. Now, right here, he's right in the middle of the street so he's not going to stop there for police interrogation. Isn't it reasonable that he goes somewhere and pulls over along the side of the road?

---

[1] Subsequent investigation did not turn up any evidence that the vehicle was actually stolen.

[OFF. CONWAY]: Well, off the curb and onto the -- yes, sir.

[DEFENSE COUNSEL]: Okay. So that would be reasonable, for him to move. Now, he doesn't accelerate rapidly. Right?

[OFF. CONWAY]: Correct.

As counsel played the video, and questioned Officer Conway about later segments of the encounter, he repeated the Officer's earlier concession before asking some other question. In that way, it might appear that Officer Conway was conceding that Appellant never evaded the stop.

Here are examples:

[DEFENSE COUNSEL]: And you've just said, 'Hey, he's not trying to run from me. He's not trying to permanently distance himself from me.' And at this time it's 41:01. Is that correct?

[OFF. CONWAY]: Yes, sir.

. . .

[DEFENSE COUNSEL]: So, up until this point, you've got a guy here. You said, 'No, he wasn't trying to get away from me, but yes, he was in his car, and he was intoxicated.' Is that about right?

[OFF. CONWAY]: Yes, sir.

But when defense counsel asked the question directly, Officer Conway stated that he did believe that Appellant was fleeing:

[DEFENSE COUNSEL]: Okay. So it's not a felony stop, as you just testified, and you just testified that he's not trying to get away from you, and you just testified that you stopped him because of his odd actions. So nothing so far from where the car was operating to where the car came to its final resting point, nothing there indicates evading. Does it?

[OFF. CONWAY]: Yes, sir, it does.

[DEFENSE COUNSEL]: But you've just told me he wasn't trying to get away from you.

[OFF. CONWAY]: Here at this point. You asked me --

[DEFENSE COUNSEL]: Okay. So up until now, he's not evading.

6

[OFF. CONWAY]: He was evading, in my opinion. And as --

[DEFENSE COUNSEL]: But -- hold on. You didn't say that before, though. Before, you said that he wasn't up until now, no, he's not trying to get away from me. That's what you just said.

[STATE'S ATTORNEY]: I'm going to object. That's a mischaracterization, Your Honor.

THE COURT: Overruled.

Appellant's counsel in fact confronted the officer with what counsel believed was a flip-flop in his testimony:

[DEFENSE COUNSEL]: That's not what you told me the first time I asked. I asked you, 'Is he intentionally trying to distance himself from you?' And you said no. Didn't you --

[OFF. CONWAY]: At that point where he stopped, no, he was not, at that time. From the time he moved his vehicle after stopping the first time until he stopped then, yes, he was evading.

[DEFENSE COUNSEL]: I'm thinking you're changing your story now, Officer. And I think the Jury realizes that. Bottom line is, not evading on the video. You didn't arrest him for evading at that point. You were arresting him for DWI.

[OFF. CONWAY]: No, sir.

In our reading of the record, Officer Conway never unequivocally stated over the sequence of the entire encounter that Appellant did not flee. Rather, in context, he claims just the opposite. But in any event, the testimony at most raises a dispute that turns on the officer's credibility, an issue vested solely with the jury. *Clayton*, 235 S.W.3d at 778 (the fact finder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic to ultimate facts). Moreover, even if we did agree that the officer made the admission, it would not be binding on the jury. The jury also had the videotape that shows Appellant stop and then move forward twice, traveling about a block and half between the first stop and when he eventually came to a complete and final stop.

Appellant also relies on the Amarillo Court of Appeals decision in *Griego v. State*, where the court found the evidence insufficient to support an evading charge. The facts of that case are

distinguishable. In *Griego* two squad cars with their lights flashing were headed in one direction while Mr. Griego was driving in the opposite direction. 345 S.W.3d at 746. The squad cars executed a U-turn, but by the time they caught up to Griego, he had already turned off the main road and was on a side street. *Id.* at 747. He then made a signaled right-hand turn, and almost immediately turned into a driveway. *Id.* A total of seventeen seconds elapsed from the time the police cruisers were behind Griego with their lights engaged to the time that he stopped. *Id.* at 752. The court further noted that Griego probably only had eight seconds to react to the officers. *Id.*

The court found the evidence insufficient to show that Griego was aware that the officers were pursuing him--an issue that Appellant here does not raise. Instead, Appellant argues that he was not fleeing. Moreover, the dashcam video in this case shows an elapsed fifty seconds between the time Appellant was first stopped, to the time when he came to a final stop. And more importantly, the video shows Appellant making an interim stop for five seconds with the police cruiser pulled behind him. Officer Conway claims that as he opened his door to exit the police cruiser, Appellant then drove away and made an un-signaled turn onto another street. Only when Officer Conway continued to pursue him, did he come to a complete and final stop. Appellant's admission that he "f**ked up" and was intoxicated, driving a stolen car provides a reason why he would attempt to flee, albeit briefly and ineffectually.[2] *See Blozinski*, 2009 WL 7098572, at *1 (in part, post-stop statement "I'm sorry. I'm sorry. . . . I just wanted to get away from you" supported evading verdict).

---

[2] One of Appellant's defensive themes at trial was that this was a simple DWI case that the State elevated to a felony because of the several threats Appellant made to the officer. As the jury was instructed, voluntary intoxication is not a defense. *See* TEX.PENAL CODE ANN. § 8.04(a)(West 2011); *Thompson v. State*, 426 S.W.3d 206, 210 (Tex.App.-- Houston [1st Dist.] 2012, pet. ref'd).

As the District Attorney conceded in closing argument, "It's not that O.J. Simpson car chase that you see on the news." Here, Appellant traveled a block and half over the course of fifty seconds from the time he first stopped to when he eventually stopped for good. It was, nonetheless, less than prompt compliance with an officer's direction to stop. We overrule Appellant's single point and affirm the conviction.


September 26, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)