**Opinion issued January 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00327-CR

———————————

## FAHAD MOHAMMAD KHAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1467228**

---

## MEMORANDUM OPINION

After appellant, Fahad Mohammad Khan, with an agreed punishment recommendation from the State, pleaded guilty to the felony offense of evading arrest, or detention, in a motor vehicle,[1] the trial court deferred adjudication of his

---

[1]     *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A).

guilt, placed him on community supervision for seven years, and assessed a fine of $500. The State, alleging a violation of a condition of his community supervision, subsequently moved to adjudicate appellant's guilt. After a hearing, the trial court found the allegation true, found appellant guilty, and assessed his punishment at confinement for four years and a fine of $500. In his sole issue, appellant contends that the evidence is insufficient to support a finding that he violated a condition of his community supervision.

We modify the trial court's judgment and affirm as modified.

**Background**

On February 6, 2017, the trial court placed appellant on community supervision, subject to certain conditions, including:

> (1) Commit no offense against the laws of this or any other State or the United States. If you are arrested for any law violation with the exception of a Class C misdemeanor, a Violation Report and a Motion to Adjudicate or Motion to Revoke Community Supervision will be submitted to the Court.

On November 30, 2017, the State filed a motion to adjudicate appellant's guilt, alleging that he had violated the above listed condition of his community supervision by:

> Committing an offense against the State of Texas, to-wit; on or about November 18, 2017, in Harris County, Texas, [appellant] . . . , did then and there unlawfully, intentionally and knowingly flee from [Harris County Sheriff's Office Officer] J. Trevino . . . , a Peace Officer . . . , lawfully attempting to detain [appellant], and [appellant] [k]new that

2

[Trevino] was a Peace Officer attempting to detain [him], and [appellant] used a motor vehicle while he was in flight.

At the hearing on the State's motion to adjudicate appellant's guilt, appellant pleaded "[n]ot true" to the above listed allegation. Officer Trevino then testified that, while on patrol in the early morning hours on November 18, 2017, he observed appellant's car driving "at a high rate of speed," approximately 102 miles per hour, according to his Doppler radar. Upon seeing appellant's car, Trevino made a U-turn in his patrol car to follow appellant, although he did not initially activate his patrol car's emergency lights. As he followed appellant's car, Trevino saw it brake "heav[ily]" and reverse southbound while in a northbound lane because appellant had driven past the street on which he wanted to turn. Trevino noted that appellant's actions in reversing his car in this manner constituted a traffic violation.

Subsequently, appellant turned his car onto Newbrook Drive and then turned onto Beckford Drive. Officer Trevino activated his patrol car's emergency lights when he turned his patrol car onto Beckford Drive behind appellant's car. Trevino noted that appellant, while driving in front of him, failed to stop at two stop signs that he encountered, indicating to Trevino that appellant was evading him.

Officer Trevino further testified that appellant's car continued north on Beckford Drive, driving at "a high rate of speed," and then made a right turn onto "a little side street" to go east. From there, appellant's car turned south and then turned east again onto Cloverwalk Lane. As Trevino followed appellant's car, appellant

3

continued to drive "very fast," although Trevino could still see appellant's car in his vision. Trevino saw the brake lights on appellant's car as appellant pulled into the driveway of his home on Cloverwalk Lane. Appellant then turned off all of the lights on his car after he stopped it in his driveway.

When Officer Trevino arrived at appellant's home, he parked his patrol car by the driveway, blocking appellant's car, and he left the patrol car's emergency lights activated. Appellant, at the time, remained in his car, and according to Trevino, the garage door to the home remained closed. When Trevino approached appellant's car, he could not initially see appellant because appellant had reclined the driver's side front seat "as far back as th[e] seat could go into the back seat." Trevino opined that it would be difficult to drive a car over 100 miles per hour with the driver's side front seat in that reclined position.

When Officer Trevino finally did see appellant inside of his car, he opened the driver's side door, got appellant out of the car, and placed him in handcuffs. Appellant did not say anything. As Trevino walked appellant to his patrol car, he asked him, "What are you doing, man? Why are you running from us?" and appellant responded, "Man, I [was] just trying to get home." (Internal quotations omitted). Appellant also, while seated in the back seat of Trevino's patrol car, apologized and stated, "Man, I never saw you. I never saw you." (Internal quotations omitted). Trevino opined that appellant, by reclining his driver's side

4

front seat, was trying to hide from him, and appellant "laid the seat down so [that Trevino] couldn't see inside of the car."

In regard to his patrol car's emergency lights, Officer Trevino testified that the lights are "LED lights" and are "pretty bright," and if someone was braking in front of his patrol car, that person would have the opportunity to see his patrol car's lights. Trevino added that it was easy to see his patrol car's emergency lights as he followed behind appellant's car because it was dark outside and the lights would have reflected off the street signs and the other cars in the area. According to Trevino, he drove approximately one-fourth of a mile behind appellant's car before activating his patrol car's emergency lights. Once Trevino turned on his patrol car's emergency lights, appellant continued to drive his car for "a half of a mile to just under a mile." Trevino testified that he had "no doubt" that appellant, as he drove, could see the emergency lights on Trevino's patrol car. Further, if he could see the taillights on appellant's car as he drove, then appellant could see the activated emergency lights on Trevino's patrol car as he followed appellant. And Trevino noted that as he followed appellant's car with his patrol car's emergency lights activated, there were places for appellant to safely stop his car. Trevino did not activate his patrol car's siren at any point.

During Officer Trevino's testimony, the trial court admitted into evidence State's Exhibit 1, the videotaped recording from Trevino's patrol car. In the

5

videotaped recording, Trevino's patrol car can be seen driving behind appellant's car without his patrol car's emergency lights initially activated. The videotaped recording shows Trevino following appellant's car in his patrol car without the emergency lights activated for approximately thirty-one seconds. After both appellant and Trevino turn their cars onto Beckford Drive, Trevino activates his patrol car's emergency lights. Appellant's car is visible on the videotaped recording when Trevino activates his patrol car's emergency lights. Upon activating the emergency lights, Trevino continues to follow appellant's car for approximately thirty seconds. The videotaped recording shows that, at times, Trevino had to drive his patrol car more than sixty miles per hour to keep up with appellant's car.

After appellant turns his car into the driveway of his home, Officer Trevino arrives within approximately two seconds with his patrol car's emergency lights still activated. Trevino noted, while watching the videotaped recording, that appellant's car and its brake lights can be seen at the same time that his patrol car's emergency lights are activated.

Asiya Khan ("Asiya"), appellant's mother, testified that appellant lives with her in her house on Cloverwalk Lane, and on November 18, 2017, she was asleep downstairs when she heard the garage door to the house open. Because appellant did not come inside, after five or ten minutes, she went outside. Asiya testified that she did not open the home's garage door that night. Instead, she believed that

6

appellant had opened it with his garage-door opener when he arrived home that night. When asked whether appellant "could [have just] open[ed] the garage and drive[n] [his car] inside" because he "want[ed] to just get home," Asiya responded, "Yes."

Following the hearing, the trial court found true the allegation that appellant had "[c]ommitt[ed] an offense against the State of Texas," found appellant guilty, and assessed his punishment at confinement for four years and a fine of $500.

## Standard of Review

Appellate review of an order adjudicating guilt is limited to determining whether the trial court abused its discretion. TEX. CODE CRIM. PROC. ANN. art. 42A.108(b) ("The determination [to adjudicate guilt] . . . is reviewable in the same manner as a [community-service] revocation hearing . . . in which the adjudication of guilt was not deferred."); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The trial court's decision must be supported by a preponderance of the evidence. *Rickels*, 202 S.W.3d at 763–64. The evidence meets this standard when the greater weight of the credible evidence creates a reasonable belief that a defendant has violated a condition of his community supervision. *Id.*

We examine the evidence in the light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); *Jones v. State*, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). As the sole trier

7

of fact, a trial court determines the credibility of witnesses and the weight to be given to their testimony. *See Garrett*, 619 S.W.2d at 174; *Jones*, 787 S.W.2d at 97.

## Adjudication of Guilt

In his sole issue, appellant argues that the trial court erred in adjudicating his guilt because the evidence is insufficient to support a finding that he violated a condition of his community supervision by committing the offense of evading arrest, or detention, in a motor vehicle.

A person commits the offense of evading arrest, or detention, "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). If the person "uses a vehicle" while "in flight," the offense is a third-degree felony. *Id.* § 38.04(b)(2)(A). A person commits the offense "only if he knows a [law enforcement] officer is attempting to arrest [or detain] him but nevertheless refuses to yield to a police show of authority." *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004), *pet. dism'd, improvidently granted*, 193 S.W.3d 903 (Tex. Crim. App. 2006).

Intent may be determined from a defendant's words, acts, and conduct. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). Courts may consider the speed, distance, and duration of a pursuit in determining whether a defendant

8

intentionally fled. *See Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.); *see also Thorn v. State*, No. 01-13-00906-CR, 2014 WL 3512811, at *4 (Tex. App.—Houston [1st Dist.] July 15, 2014, pet. ref'd.) (mem. op., not designated for publication). "[A]nything less than prompt compliance with a[] [law enforcement] officer's direction to stop" can constitute "an attempt to evade arrest or detention." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.); *see also Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.).

Circumstantial evidence is as probative as direct evidence and can suffice to establish the guilt of an actor. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). Knowledge that a law enforcement officer is attempting to arrest or detain a subject can be established through circumstantial evidence. *Wright v. State*, 855 S.W.2d 110, 112 (Tex. App.—Houston [14th Dist.] 1993, no pet.); *see also Rico v. State*, No. 07-11-00146-CR, 2012 WL 952113, at *2 (Tex. App.—Amarillo Mar. 21, 2012, pet. ref'd) (mem. op., not designated for publication).

Officer Trevino testified that, while on patrol in the early morning hours on November 18, 2017, he observed appellant's car driving "at a high rate of speed," approximately 102 miles per hour, according to his Doppler radar. Upon seeing appellant's car, Trevino made a U-turn in his patrol car to follow appellant, although

he did not initially activate his patrol car's emergency lights. As he followed appellant's car, Trevino saw it brake "heav[ily]" and reverse southbound while in a northbound lane because appellant had driven past the street on which he wanted to turn.

Subsequently, appellant turned his car onto Newbrook Drive and then turned onto Beckford Drive. And Trevino activated his patrol car's emergency lights when he turned onto Beckford Drive behind appellant's car. *See Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd) (law enforcement officer asserts his authority and attempts to arrest or detain defendant where he uses his emergency lights); *see also Lopez*, 415 S.W.3d at 497 (fact finder could reasonably infer defendant was aware law enforcement officers were attempting to detain him, but he intended to flee, where pursuing officers had their lights and sirens activated while following defendant). Trevino testified that appellant, while driving in front of him, failed to stop at two stop signs that he encountered, indicating to Trevino that appellant was evading him. *See, e.g.*, *Diaz v. State*, No. 01-13-00489-CR, 2013 WL 5827810, at *3–4 (Tex. App.—Houston [1st Dist.] Oct. 29, 2013, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to find defendant committed offense of evading arrest or detention in motor vehicle where he "drove through a stop sign without stopping" while being followed by two patrol cars with their emergency lights activated); *Delgado v. State*, No. 08-04-00071-CR, 2005 WL

10

1314986, at *3 (Tex. App.—El Paso June 2, 2005, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to find defendant committed offense of evading arrest or detention in motor vehicle where after law enforcement officer activated her patrol car's emergency lights and siren, defendant "ran a stop sign" and traveled several blocks before stopping).

Officer Trevino also testified that as he followed appellant's car, appellant continued driving north on Beckford Drive, at "a high rate of speed," and then made a right turn onto "a little side street" to go east. From there, appellant's car turned south and then turned east again onto Cloverwalk Lane. As Trevino followed appellant's car, appellant continued driving "very fast," although Trevino could still see appellant's car in his vision. Trevino then saw the brake lights on appellant's car as appellant pulled his car into the driveway of his home on Cloverwalk Lane. *See, e.g.*, *Lopez*, 415 S.W.3d at 497 (evidence sufficient to find defendant committed offense of evading arrest or detention in motor vehicle where law enforcement officers, while driving behind defendant's car, activated their patrol car's lights and defendant continued traveling through residential area, "for one and one-half minutes or approximately 0.6 miles," making several turns before pulling into his driveway). Trevino noted that appellant turned off all of the lights on his car after he stopped it in his driveway. *See, e.g.*, *Hamrick v. State*, No. 05-06-01311-CR, 2009 WL 620964, at *3 (Tex. App.—Dallas Mar. 12, 2009, pet. dism'd, untimely

11

filed) (not designated for publication) (evidence sufficient to support finding defendant committed offense of evading arrest or detention in motor vehicle where after law enforcement officer activated his patrol car's emergency lights, defendant continued driving and turned off his car's lights); *Coggin v. State*, No. 03-04-00585-CR, 2006 WL 1292581, at *2 (Tex. App.—Austin May 12, 2006, no pet.) (mem. op., not designated for publication) (evidence sufficient to find that defendant intentionally fled where defendant, after passing law enforcement officer's patrol car, turned off his car's lights and drove home at high rate of speed).

When Officer Trevino arrived at appellant's home, he parked his patrol car by the driveway, blocking appellant's car, and he left the patrol car's emergency lights activated. Appellant, at the time, remained in his car, and according to Trevino, the garage door to the home remained closed. When Trevino approached appellant's car, he could not initially see appellant because appellant had reclined the driver's side front seat "as far back as th[e] seat could go into the back seat." Trevino believed that appellant, by reclining his driver's side front seat, was trying to hide from him, and appellant "laid the seat down so [that Trevino] couldn't see inside of the car." *See, e.g.*, *Jackson v. State*, 530 S.W.3d 738, 742–43, 742 n.1 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (fact finder could infer defendant's guilt where law enforcement officers found him hiding after evading arrest or detention in motor vehicle); *Washington v. State*, Nos. 14-15-00558-CR, 14-15-00559-CR, 2016 WL

12

4483953, at *4 (Tex. App.—Houston [14th Dist.] Aug. 25, 2016, no pet.) (mem. op., not designated for publication) (fact finder "could have concluded . . . that [defendant] intentionally fled from a person he knew was a peace officer lawfully attempting to detain [him] when he immediately ran from the vehicle . . . and hid"); *cf. Griego*, 345 S.W.3d at 753 ("Evidence that [defendant] got out of his car and, *instead* of running or hiding, began walking toward the residence while carrying a beer . . . indicate[d] that he did not know officers were attempting to arrest or detain him." (emphasis added)).

When Officer Trevino finally did see appellant inside of the car, he opened the driver's side door, got appellant out of the car, and placed him in handcuffs. Appellant did not initially say anything; however, while sitting in the back seat of Trevino's patrol car, appellant apologized. *See Reyes v. State*, 465 S.W.3d 801, 806 (Tex. App.—Eastland 2015, pet. ref'd) (considering defendant's conduct upon exiting his car in holding that his "actions and the surrounding circumstances sufficiently proved that [he] intentionally fled in a vehicle from [a law enforcement officer], who [he] knew was attempting to lawfully arrest or detain him"); *Schmitt v. State*, No. 13-13-00132-CR, 2013 WL 6924171, at *3 (Tex. App.—Corpus Christi Dec. 30, 2013, pet. ref'd) (mem. op., not designated for publication) (evidence that defendant apologized to law enforcement officer "for not stopping" indicated "he

knew that [the] [o]fficer . . . had been attempting to detain him as he continued to travel in his vehicle" (internal quotations omitted)).

In regard to his patrol car's emergency lights, Officer Trevino testified that the lights are "LED lights" and are "pretty bright," and if someone was braking in front of his patrol car, that person would have the opportunity to see his patrol car's lights. Trevino said that it was easy to see his patrol car's emergency lights as he followed appellant's car because it was dark outside and the lights would have reflected off the street signs and the other cars in the area. *See, e.g.*, *Schmitt*, 2013 WL 6924171, at *4 ("[A] rational trier of fact could infer [that the patrol car's emergency lights] were visible and known to [defendant] given that it was a 'dark' road . . . ."). According to Trevino, he drove approximately one-fourth of a mile behind appellant's car before activating his patrol car's emergency lights. However, once Trevino turned on his patrol car's emergency lights, appellant continued to drive his car for "a half of a mile to just under a mile." *See, e.g.*, *Lopez*, 415 S.W.3d at 497 ("From the officers' testimony that their lights . . . were activated for 0.6 miles or approximately one and one-half minutes, the [fact finder] could [have] reasonably infer[red] that [defendant] was aware the officers were attempting to detain him but [he] intended to flee to the driveway of his house."); *O'Quinn v. State*, No. 10-11-00114-CR, 2012 WL 3055280, at *4 (Tex. App.—Waco July 26, 2012, no

pet.) (mem. op., not designated for publication) (sufficient evidence of intent to evade arrest, or detention, where defendant did not stop his car for thirty seconds).

Officer Trevino testified that he had "no doubt" that appellant, as he drove, could see the emergency lights on Trevino's patrol car. And according to Trevino, if he could see the taillights on appellant's car as he drove, then appellant could see the activated emergency lights on Trevino's patrol car as he followed appellant. *See, e.g.*, *Britt v. State*, No. 14-06-00131-CR, 2007 WL 1215490, at \*3 (Tex. App.— Houston [14th Dist.] Apr. 26, 2007, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to find defendant intentionally fled where law enforcement officer testified that his patrol car's emergency lights would have been noticeable to defendant). Trevino noted that as he followed appellant's car with his emergency lights activated, there were places for appellant to safely stop his car. *See, e.g.*, *Schmitt*, 2013 WL 6924171, at \*1, \*5 (evidence sufficient to find defendant knew officer trying to detain him where law enforcement officer testified defendant "had a safe place to stop," while being followed by officer in patrol car with activated emergency lights); *Luna v. State*, No. 04-05-00518-CR, 2006 WL 1814308, at \*2–3 (Tex. App.—San Antonio July 5, 2006, no pet.) (mem. op., not designated for publication) (evidence sufficient to find defendant intentionally fled where law enforcement officer testified that, after activating his patrol car's emergency lights, defendant did not stop until he arrived at his place of residence).

The videotaped recording from Trevino's patrol car, admitted into evidence at trial, shows Trevino's patrol car driving behind appellant's car for approximately thirty-one seconds without his patrol car's emergency lights activated. After both appellant and Trevino turn their cars onto Beckford Drive, Trevino activates his patrol car's emergency lights. Appellant's car is visible on the videotaped recording when Trevino activates his patrol car's emergency lights. Upon activating his patrol car's emergency lights, Trevino continues to follow appellant's car for approximately thirty seconds. At times, Trevino had to drive his patrol car more than sixty miles per hour to keep up with appellant's car.

After appellant turns his car into the driveway of his home, Officer Trevino arrives at the home within approximately two seconds with his patrol car's emergency lights still activated. Trevino noted, while watching the videotaped recording, that appellant's car and its brake lights can be seen on the recording, at the same time that Trevino's patrol car's emergency lights are activated. *See, e.g.*, *Rico*, 2012 WL 952113, at *3 (noting in regard to videotaped recording that defendant's "tail lights can be seen in front of [law enforcement officer's] vehicle"); *Coggin*, 2006 WL 1292581, at *2 (evidence sufficient to find defendant intentionally fled where law enforcement officer testified that defendant "would have been able to see his emergency lights . . . during the chase").

Appellant argues that he could not have known that "[the] police were present and that they were pursuing" him because Officer Trevino "did not make a show of authority until [appellant] was almost home"; Trevino only had his "emergency lights activated to alert" appellant for "seven to eight seconds," "over five different streets inside of a neighborhood full of obstacles including trees, houses, and vehicles"; appellant "never made any changes in his driving pattern to indicate [that] he [had] ever s[een] Trevino"; and appellant told Trevino "[M]an, I'm just trying to get home" and "[M]an, I never saw you. I never saw you."[2] (Internal quotations omitted).

No particular speed, distance, or duration of pursuit is required to show the requisite intent for the offense of evading arrest, or detention, in a motor vehicle. *See Griego*, 345 S.W.3d at 751; *see also Reyes*, 465 S.W.3d at 805–06 (evidence sufficient to find defendant "intentionally fled in a vehicle" despite "pursuit last[ing] less than a minute"); *Baines v. State*, 418 S.W.3d 663, 666, 670 (Tex. App.—

---

[2] Although appellant cites *Griego v. State* and *Redwine v. State*, in support of his assertion that he did not know that Officer Trevino was pursuing him, we find the facts of those cases to be distinguishable from the facts of the instant case. *See* 345 S.W.3d 742, 752 (Tex. App.—Amarillo 2011, no pet.) (law enforcement officers traveling in opposite direction with their patrol car's emergency lights and siren already activated and would have appeared to have been responding to another matter in that opposite direction); 305 S.W.3d 360, 361, 363 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (law enforcement officers did not activate their patrol cars' emergency lights and sirens and officers did not make a show of authority until after defendant had exited his vehicle and ran into a forest).

Texarkana 2010, pet. ref'd) (noting "length and speed of chase are not determinative factors" and holding evidence sufficient to support finding defendant intentionally fled despite "chase [occurring] . . . around a single city block" at low speed); *Horne*, 228 S.W.3d at 446 (evidence sufficient to find defendant "attempting to evade arrest, even if only for [a] few minutes"); *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Amarillo 2007, no pet.) (law "requires only an attempt to get away from a known officer of the law"). And a person who continues driving to his own home, while being pursued by a law enforcement officer, may still possess the intent to commit the offense of evading arrest, or detention, in a motor vehicle. *See Horne*, 228 S.W.3d at 445–46 (evidence sufficient to find intent to evade arrest, or detention, where, although defendant eventually pulled into his own driveway, he did not pull over and stop for "the few minutes it took to park his car in front of his mother's house"); *see also Carter v. State*, No. 01-16-00075-CR, 2016 WL 7368103, at *3 (Tex. App.—Houston [1st Dist.] Dec. 15, 2016, no pet.) (mem. op., not designated for publication) (evidence sufficient to find intent to evade arrest, or detention, although defendant argued law enforcement officer's car was block or more behind him, speed of pursuit was unremarkable, its duration was short, lasting no more than two minutes, and at the end, he pulled into his own driveway); *Luna*, 2006 WL 1814308, at *2 (evidence sufficient to find defendant intentionally fled where law enforcement officer testified that, after activating his patrol car's emergency lights,

18

defendant only stopped when he arrived at his place of residence); *Coggin*, 2006 WL 1292581, at *2 (rejecting argument "that it cannot be a crime for a person to go to his own home").

The trial court's role, as the fact finder in this case, is to reconcile any conflicts in the evidence and judge the witnesses' credibility. *See Garrett*, 619 S.W.2d at 174; *Shah v. State*, 403 S.W.3d 29, 34 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.).

Here, the record supports, by a preponderance of evidence, the trial court's finding that appellant violated a condition of his community supervision by committing the offense of evading arrest, or detention, in a motor vehicle. *See* TEX. PENAL CODE ANN. § 38.04(a). Accordingly, we hold that the trial court did not err in finding true the allegation that appellant had "[c]ommitt[ed] an offense against the State of Texas" and adjudicating his guilt.

We overrule appellant's sole issue.

## Modification of Judgment

We note that the trial court's written judgment does not accurately comport with the record in this case in that it, under the heading of "special finding[] or order[]," states: "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." Here, however, the record reflects that the trial court certified appellant's right to appeal. *See* TEX. R. APP. P. 25.2(d) (requiring trial court to

19

certify defendant's right of appeal). When there is a conflict between a trial court's "Certification of [the] Defendant's Right of Appeal" and a written judgment concerning a defendant's right to appeal, the certification controls, especially when the remainder of the record supports the statement in the certification. *See Grice v. State*, 162 S.W.3d 641, 645 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when [they] ha[ve] the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)). Although neither party addresses the inconsistency between the trial court's written judgment and the record in this case, we, based on our review, conclude that the portion of the judgment regarding appellant's right to appeal does not accurately comport with the record in this case. *See Asberry*, 813 S.W.2d at 529–30 (authority to correct incorrect judgment not dependent upon request of any party).

Accordingly, we modify the trial court's judgment to strike the "special finding[] or order[]" of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." *See* TEX. R. APP. P. 43.2(b); *see, e.g., Jones v. State*, No.

20

01-14-00385-CR, 2015 WL 4591745, at *9 (Tex. App.—Houston [1st Dist.] July 30, 2015, no pet.) (mem. op., not designated for publication).

## Conclusion

We affirm the judgment of the trial court as modified.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).